GOODALE v. SOWELL.

1. CONSTITUTION—STOCK LAW.—An act exempting certain portions of a county from the operations of a general stock law is constitutional.

2. IBID.—IBID.—EMINENT DOMAIN.—Such exemption is not the taking of property within the exempted territorial limits either for a public or private purpose, in the sense of the Constitution of 1868 or 1895, although the principal effect of the statute is to convert the lands therein into a common pasture.

3. IBID.—IBID.—IBID.—CONDEMNATION.—The requirements of the acts of 1886 and 1887 exempting portions of Chesterfield County from operations of stock law, that the residents within the exempted section should build and keep in good repair a fence along the lines therein described, was unconstitutional, because it was for a private purpose and was taking the property of those upon whose lands the fence was required to be built, and that of the residents within said section, without compensation and without their consent.

4. IBID.—IBID.—WAIVER—CONDEMNATION—STATUTES.—The right to compensation being personal to the owners of the land upon which the fence was required to be built, and *to the residents* within the exempted territory, they had the power to waive this objection to the constitutionality of the acts.

5. IBID.—IBID.—IBID.—STATUTES.—While they had the right to waive this objection to the *constitutionality* of the acts, they did not have power to cause the acts to become operative except by compliance with the conditions therein expressed, nor did they have the power to cause the acts to continue in existence after they had ceased to be operative, *by reason of the failure to comply with the conditions therein expressed, and upon which they were to remain of force.*

6. IBID.—IBID.—An act giving to commissioners the power to include or exclude such persons as they think proper from territory exempt from the provisions of the general stock law is unconstitutional.

Before GARY, J., Chesterfield, April, 1901.　　Affirmed.

Action by Alexander Goodale *et al.* against Ervin Sowell *et al.* The Circuit decree is as follows:

"This is an action on the equity side of the Court, for an injunction, brought by the plaintiffs as taxpayers and citizens of that section of Chesterfield County embraced in the act of the General Assembly of this State, exempting said section from the provisions of the general stock law. The

action is against certain commissioners created under and by the act of 1899, page 172, entitled 'An act to provide for commissioners to superintend the stock law fence around that portion of Chesterfield County exempted from the operation of the stock law, and to provide for the maintenance of the said fence, and to punish parties destroying or injuring it,' to enjoin said commissioners from repairing and reconstructing said fence around said section, and from approving accounts for the building of the said fence and making further contracts for said work, and also against the county treasurer, I. P. Mangum, enjoining him from paying out funds in his hands for said purpose, and to enjoin the board of county commissioners from approving accounts for such work, and giving orders on the county treasurer for the payment of such accounts. The contention of the plaintiffs is, that the act of 1899, as well as the previous acts of the General Assembly exempting certain portions of Chesterfield County, are unconstitutional in the following particulars: 1st. Private property is taken for the use of private purposes, without the consent of the owners, or without making just compensation therefor. 2d. That they tend to abridge the privileges and immunities of citiezns of this State, and to deprive persons of their property without due process of law, and to deny to persons within the State the equal protection of the laws. 3d. That the act of 1899 is unconstitutional, in that it seeks to except certain persons from an exemption granted to others of the same class in the same territory, under like circumstances, by leaving it to the arbitrary will of the commissioners created by said act, whether they will allow any particular persons of this class to come within the exemption, which they may refuse or deny to another. Also, in that said provision operates unequally upon persons within its territorial limits of the same class, by allowing (if the commissioners see fit to do so), those who can afford to make an extra fence, to put themselves within or without the exempted section of said county.

"To better comprehend the issues involved, it will be ne-

cessary to give a brief history of the legislation on this exempted section. In 1886, the General Assembly enacted an act, which provided that this section of said county should be exempt from the provisions of the general stock law: *Provided,* That the residents of said section 'shall build and keep in good repair a fence along the lines above described, such fence to be fully five feet high at every point, if built of rails; also to be well staked and ridered and sufficiently strong and close to protect the lands outside of said territory from the invasions of all stock and animals mentioned in the general stock law.' The act further provided that 'this exemption shall not take effect till said fence is completed, and shall cease as soon as there is a failure to keep said fence up at any point: *Provided, further,* That said fence be completed on or before the 1st day of January, 1889; and in case of failure to complete it by that time that then this exemption shall not apply.' Acts 1887-89.

"In the agreed statement of facts used at the hearing of the cause appears the following: 'That the fence provided for in the acts of 1886 and 1887 was never built in respect to height, in compliance with the terms of the said acts, nor has the same as built been maintained at all times—at times the said fence having been completely down along most of the line, and at places there has been no fence for several years; but the inhabitants all acquiesced in and acted upon the exemption with the fence as built until within the past five years.' That the commissioners under the act of 1899 are building and threatening to continue to build the fence around the sections purporting to be exempt from the general stock law. That no compensation has been paid, or provided by law to be paid, for the right of way for the enclosure, nor for the use of the land enclosed. That a large portion of the residents of the section purported to be exempt are farmers, who raise stock, and a comparatively small per cent. of the land is under cultivation. That when this portion of the country was first exempted from the provisions of the stock law under acts 1886 and 1887, no objec-

tion was made to the proposed exemption, and a large majority of them consented either expressly or tacitly to same, and all acted under said exemption in good faith until within the last five years, but numbers of them now object; and other parties who have moved into said section and bought property there never have consented, but object to same. The fence as built under acts 1886 and 1887 was located only on lands of persons consenting to same, and the commissioners appointed under the act of 1899 do not propose to build the fence on the land of any who object to such location. It is further agreed, that a small number of persons owning property in the section purporting to be exempt objected to the exemption prior to the act of 1899, and the line of the old fence is now on the lands of some of these parties, but it was consented to when placed there by parties then owning the land. Under the above as the existing facts, both parties desire to test the constitutionality of the several acts of the General Assembly herein referred to. By a consent order, the claims for building fence up to the commencement of the suit have been paid.'

"By a comparison of the acts of 1886 and 1887, it will be seen that the provisions of the two acts are very similar. The act of 1887 changing somewhat the course of the fence, which was also required to be five feet high at every point, but was not required to be staked and ridered as in the first act. The following exemption, however, is found in both acts: 'that this exemption shall not take effect until said fence is completed, and shall cease as soon as there is a failure to keep said fence up at any point.' It is admitted that such a fence as the act prescribed was not built, nor was the same built within the time limited by said act. A fence was, however, built to which the residents of that section made no objection, and a large majority of them acquiesced in the same for a while. Since that time, however, the fence has not been kept up, and a portion of the time it has been down completely for several years, and I believe has been destroyed (as stated in argument) by fire. This state of affairs

existed till 1899, when the General Assembly passed an act under which the commissioners are now operating, the purpose of which was the rebuilding, repairing and reconstructing the old fence. At this stage of the case my conclusion is, that the exemption from the provisions of the general stock law, contemplated by the acts of 1886 and 1887, were conditional, and those conditions not having been complied with, there was no exemption. Those acts expressly provide 'that this exemption shall not take effect until said fence is completed, and shall cease as soon as there is a failure to keep said fence up at every point. It being admitted that the fence was not built within the time nor in compliance with the terms of the act, there was no exemption under the same. If, however, it is contended that there was a substantial compliance, in which the citizens in that section of the county acquiesced, they would still have the right to now object, for the reason that the act provides that such exemption 'shall cease as soon as there is a failure to keep said fence up at any point.' The commissioners created under the act of 1899 are constituted 'commissioners to superintend and repair and reconstruct the fence around that portion of Chesterfield County which is exempt from the stock law,' virtually admitting that at the time of the passage of said act the fence had not been kept up as contemplated by the previous acts.

"Having reached the conclusion that the plaintiffs have not so acquiesced or consented to the exemption as the establishment of the fence under the acts of 1886-7, as to estop them from maintaining this action, we are now confronted with the real issue in the case. Are the acts unconstitutional? In the agreed statement of facts we find the following: 'That no compensation has been paid, or provided by law to be paid, for the right of way for the enclosure, nor for the use of the land enclosed.' And yet the act provides that the commissioners 'shall determine where said fence shall be located, and shall have the right to enter and have it built where they order it to be built.' On the very face of

the act, it seems to me that authority is given to said commissioners to take and appropriate private property for a private purpose, without the consent of the owner and without any compensation being first paid or provided to be paid, and is in derogation of art. I., sec. 25, of the Constitution of 1868, which provides: 'Private property shall not be taken for public use, or for the use of corporations, or for private use without the consent of the owner, or a just compensation being made therefor.' The Constitution of 1895 is to the same effect. Art. I., sec. 17: 'Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation first being made.' Our own case of *Fort* v. *Goodwin,* 36 S. C., 453, is directly in point. I quote from the syllabus: 'An act of the legislature cannot authorize land to be taken for the building of a fence to increase a pasture in a section of a county for the supposed benefit of those persons who own land within the pasture limits—certainly not without the consent of the owners or unless a just compensation be made therefor, even though the pasture be so determined upon by a vote of two-thirds of the freehold voters residing within those limits, at an election held for the purpose under statutory authority.'

"In the agreed statement of facts it is stated that both parties desire to test the constitutionality of the several acts of the General Assembly referred to. The parties having signified this desire, I think it proper that I should consider another phase of the act of 1899. Under the provisions of that act the commissioners are given the power to discriminate between persons in the same territorial limits, in the same circumstances. This power is given by the expressed terms of the act: 'they (the commissioners) shall have the right to allow parties living on the inside who desire to be allowed to be placed on the outside, or parties living on the outside who desire to be included within said fence, to be included or excluded, as the case may be, on their making the extra fence required to include or exclude them.' In the recent case of *Hill* v. *City Council of Abbeville,* 59 S. C.,

415, the license ordinance of the city of Abbeville was attacked as being unconstitutional in numerous particulars; the seventh allegation of the complaint in that case alleged 'That the license ordinance is also illegal and void, and contrary to sec. 5, of art. I., of the Constitution of this State, in that said ordinance provides "That no person, firm or corporation shall engage in, prosecute or carry on any trade, business, occupation or profession hereinafter mentioned, without first having paid a special license tax therefor, to wit: etc.," and section 4 of said ordinance provides as follows: 'The city council hereby reserves the right to refuse or revoke any license for any cause which may seem to it just;' thus putting it in the power of the city council of Abbeville to abridge the privileges of the citizens of said city and deprive them of their liberty and property without due process of law, and to deny to any one that they may see fit the equal protection of the laws,' and Justice Pope, in commenting upon said paragraph, said: 'I think that section is, as alleged, invalid and illegal. The city council legislates by way of ordinance, and can only ordain such ordinances as the law permits them to make. There is no law authorizing said council to revoke any license for any cause which may seem to it just. There may be causes, legal causes, for which council might revoke a license, but certainly "any cause," which in its opinion, irrespective of law, may seem to it "just," is beyond the power, and, therefore, without warrant of law. But this is a speculative question. Council has not refused or revoked any license for any cause which seemed to it just. It will be time enough to consider such refusal or revocation when that issue is presented. Again, this section 4 may be stricken out and it would not destroy the entire ordinance, nor seriously interfere with the enforcement of said ordinance.' On appeal the decree of Judge Aldrich was affirmed.

"It is, therefore, ordered, that the temporary order of injunction heretofore granted in this cause be continued of force and made perpetual, and the injunction prayed for in

the complaint be granted. It is further ordered, that inasmuch as I have been notified that there was an agreement of council depending on the result of this decree, that leave is hereby granted to effectuate the same at the foot of this decree, should they be so advised."

From this order the defendants appeal.

*Messrs. Stevenson & Matheson,* for appellant, cite: *Presumption is always in favor of constitutionality of an act:* 41 S. C., 233; 16 S. C., 32. *Statute may be made to take effect on happening of some subsequent event:* Cooley's Con. Lim., pp. 137-139. *Party affected removes all obstacles of operation of statute on conditions by consenting to its operation without:* Cooley's Con. Lim., pp. 214-215. *Right to discriminate without acts of discrimination does not make statute unconstitutional:* 170 U. S., 213. *The legislature intended the acts of 1886, 1887 and 1899 as a whole:* Cooley's Con. Lim., 210-211; 30 S. C., 365. *Part of act may be stricken out as unconstitutional, leaving remainder:* 59 S. C., 415.

*Mr. Edward McIver,* contra, cites: *These acts are unconstitutional:* 36 S. C., 545; 30 S. C., 367; 38 S. C., 502. *Legislature cannot authorize commissioners to discriminate as to others who shall go within the exemption:* 170 U. S., 213; 118 U. S., 356.

*Mr. W. P. Pollock,* also contra, cites: *Private property cannot be taken without compensation:* Con. 1868, art. I., sec. 23; Con. 1895, art. I., sec. 17; 15 S. E. R., 726. *The acts do not bear equally on all in exempted sections:* Con. 1868, art. I., sec. 12; Con. U. S., amend. XIV.; Cooley Con. Lim., 390; 4 S. C., 410; 6 S. C., 1; 25 S. C., 53; 21 S. C., 296; 9 S. E. R., 339. *These acts are unconstitutional because contrary to natural right and fundamental principles of our government:* 15 S. E. R., 727; 17 S. E. R., 134.

February 25, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This appeal involves the constitutionality of certain statutes exempting portions of Chesterfield County from the operation of the general stock law. The facts are fully set out in the decree of his Honor, the Circuit Judge, which will be reported. The conclusions announced in that decree, for the reasons therein stated, supersede the necessity on the part of this Court for an extended discussion of the questions under consideration; especially as the Court has already passed upon the constitutionality of similar statutes in the cases of *Utsey* v. *Hiott,* 30 S. C., 360; *Fort* v. *Goodwin,* 36 S. C., 445; and *Sanders* v. *Venning,* 38 S. C., 502. Our views in brief are as follows:

*First.* It is not unconstitutional for the legislature to enact a statute exempting certain portions of a county from the operation of the general stock law. *Utsey* v. *Hiott,* 30 S. C., 365-6.

*Second.* The exemption of certain sections of a county from the operations of general stock law is not the taking of the property within the exempted territorial limits either for a public or private purpose, in the sense of the Constitution of 1868 or 1895, although the principal effect of the statute is to convert the lands therein into a common pasture.

*Third.* The requirement in the acts of 1886, 19 Stat., 500, and 1887, 19 Stat., 997, that the residents of the exempted section should build and keep in good repair a fence along the lines therein described, was unconstitutional, because it was for a private purpose, and was the taking of the property of those upon whose land the fence was required to be built, without compensation and without their consent; it was likewise the taking of the property of the residents within the exempted section without compensation and without their consent, by requiring them to build said fence.

*Fourth.* The right to compensation being personal to the

owners of the land upon which the fence was required to be built and to the residents within the exempted territory, they had the power to waive this objection to the constitutionality of the acts. *State* v. *Faile,* 43 S. C., 52; Cooley Con. Lim., pp. 214-5.

*Fifth.* While they had the right to waive this objection to the *constitutionality* of the acts, they did not have the power to cause the acts to become operative except by compliance with the conditions therein expressed; nor did they have the power to cause the acts to continue in existence after they had ceased to be operative by reason of the failure to comply with the conditions therein expressed, and upon which they were to remain of force. In 23 Enc. of Law, 221-2, it is said: "It is competent for the legislature to enact a law the ultimate operation of which may by its own terms be made to depend upon a contingency * * * And the statute cannot be made effective before the event happens by any acts or series of supplements passed upon the assumption that the event has happened and that the law is in force." When the statute of 1899, 22 Stat., 172, was enacted, the acts of 1886 and 1887 were inoperative and without force and effect.

*Sixth.* The act of 1899, 22 Stat., 172, was not only inimical to the Constitution for the reasons hereinbefore stated, but was likewise unconstitutional in that it conferred upon the commissioners in terms expressed on the face thereof arbitrary powers of discrimination against the rights of those living on the outside or inside who might desire to be excluded or included within said fence. *Yick Wo* v. *Hopkins,* 118 U. S., 356. These conclusions practically dispose of all the exceptions.

Judgment affirmed.