### ROSS v. RAILWAY COMPANY.

1. Authority conferred by charter to construct a railroad gives the right to take and condemn lands and rights of way and to cross or run along highways and other ways. Where, therefore, the General Statutes prescribes the manner of acquiring rights of way over "lands," and the mode of fixing the compensation, the term "lands" includes all rights or easements growing thereout. Therefore where a railroad is constructed along a private right of way, the person entitled to its use cannot maintain an action at law against the railroad company to recover damages, his only remedy being the proper proceeding under the statute to obtain compensation.

2. Even if the party injured could not have proceeded under this statute to obtain compensation, still this action could not be maintained ; for if the railroad was so constructed along this private way as to obstruct it, it was in violation of section 1531, General Statutes, which declares that a railroad shall be laid out "across a highway *or other way*" so as not to obstruct the same, and in such case the only action allowed to the party injured is an action to recover the specific penalty prescribed in section 1539.

3. Where a complaint alleges an obstruction to a way whereby plaintiff is prevented from passing and repassing, and the testimony shows that twelve feet in width of this way is free from obstruction, there would seem to be a fatal variance between the *allegata* and the *probata*.
   MR. CHIEF JUSTICE SIMPSON, *dissenting.*

Before PRESSLEY, J., Chester, October, 1889.

This was an action by Carter Ross against The Georgia, Caro-

lina & Northern Railway Company, commenced in September, 1889. The opinion states the case.

*Mr. J. L. Glenn*, for appellant.

*Mr. G. W. Gage*, contra.

October 24, 1890.   The opinion of the court was delivered by

Mr. Justice McIver.   The substantial allegations of the complaint are as follows : that plaintiff, being the owner of a lot in the town of Chester, is entitled to "a private way," known as Peace street, thirty feet in width, as his only means of egress from his said lot into Pine street, a public highway in said town ; that defendant has obstructed said private way "by erecting therein and across the same an embankment of earth from four to twelve feet high, so that the plaintiff is utterly unable, as was and is his right, to pass and repass along the said way with teams or on foot ;" that the plaintiff has been damaged thereby to the amount of five hundred dollars, for which sum, together with costs, judgment is demanded.   The defendant, by its answer, denies these allegations, and, as a further defence, says that if the said private way has been in any way obstructed by defendant, it has been in the construction of its railway upon its own land, in accordance with and by virtue of the powers granted by the legislature to defendant in its charter, and that plaintiff still has an unobstructed way from his lot to Pine street provided by defendant, and it is submitted that if plaintiff has been deprived of his use of Peace street by the construction of defendant's railway, his only remedy is to have his damages assessed in the mode prescribed by statute.

The testimony on the part of the plaintiff was that he had purchased from one Wylie a lot upon which he resided, which was described in the deed from said Wylie as bounded on the south by Peace street, and was so represented on a plat attached to said deed ; "that Peace street, laid out 30 feet wide, was, at the time of plaintiff's purchase and at the trial, the plaintiff's only way leading from out of the plaintiff's lot to a public way, to wit, Pine street ; that the defendant corporation constructed its road

bed along and in the said Peace street, from its junction with Pine southwestwardly to a point where it passes the southwestern corner of plaintiff's lot, beginning with a fill about twelve feet high and ending with a fill four feet high in front of plaintiff's lot; that, after the construction of the fill, Peace street was twenty-five feet wide in front of plaintiff's house, and twelve feet wide at the junction with Pine street, and at most other points was twenty feet wide." At the close of the testimony on the part of the plaintiff, a motion for a non-suit was made and refused, to which exception was duly taken.

The defendant then offered testimony tending to show that the original location of the road-bed had been so changed as to leave a way 25 feet wide between the foot of defendant's embankment and the front of plaintiff's lot, and that defendant had procured from the landowners between plaintiff's lot and Pine street an additional right of way so as to give plaintiff an unobstructed outlet to Pine street not narrower at any point than 12 feet, as indicated by the diagram offered in evidence, which should be incorporated in the report of this case.

Upon the case as thus presented, the jury were instructed, amongst other things, as follows: "Where one person sells a lot and calls for a street as a boundary of the lot he sells, that gives the purchaser of the lot the right to use the street. * * * No corporation has the right to obstruct him in the use of it. Admitting that the railroad company had the right to cross it, or cross it diagonally, it is still under the law of the land bound to cross it in such a manner as not to obstruct him in the use of it. If it has done so, he is entitled to your verdict: first, that the plaintiff is entitled to the use of Peace street as a private way. Your verdict will be that he is entitled to the use of the street— to the unobstructed use of Peace street, and we find that the defendant corporation has obstructed the said street, and would give the plaintiff so many dollars damages." Then after instructing the jury as to the claim for exemplary damages—a matter not now involved in the case—the Circuit Judge proceeded to say: "Then what are the actual damages? The party, it seems, was obstructed in the use of the street wholly for about a year or perhaps a little more [though of this we do not find in the tes-

DIAGRAM OF THE PREMISES.

PINE STREET.

W. GILL WYLIE.

TELL GRAY.

BEN WILKS.

W. GILL WYLIE.

R. MIMMS.

CARTER ROSS.

HENDERSON.

12 ft.

street.

25 ft.

25

FOOT OF BANK.

G. C. & N. RAILWAY.

G. C. & N. R. R. purchased from W. Gill Wylie.

*Scale*—200 feet to 1 inch.

WYLIE STREET.

timony as reported in the "Case" a particle of evidence]. Furthermore, even when the street was open so that he may have the use of it, he has not the use of the street according to the width that his purchase called for. That is the testimony, and the question then is, does the narrowing of that street injure the value of his property? Will it permanently injure the value of his property? If so, then it is damaged. Anything which will permanently injure the value of his property, the damage to that property must be allowed." And at the conclusion of the charge these words are used: "My simple charge is that if that street is obstructed and made less convenient by the railroad, so as to injure the value of the property, the plaintiff is entitled to recover the loss in value to his property, and also for the time his road was obstructed, whatever the jury may think is right."

The jury returned a verdict in the following form: "We find the plaintiff has the right to the unobstructed use of Peace street and five ($5) dollars damages in this case."

The defendant appeals upon the several grounds set out in the record, in which error is imputed to the Circuit Judge in the following particulars:

1st. In refusing the motion for a non-suit.

2nd. In not holding "that the use of a part of Peace street by the defendant in the construction of its railway was lawful and not wrongful, and that plaintiff was only entitled to have an assessment of the amount of compensation due him for the obstruction of Peace street by defendant.

3rd. In holding that plaintiff was entitled to any other remedy than the special proceeding provided by statute for the assessment of the amount to be paid by railway companies for rights of way.

4th. In holding that a private right of way or the use thereof could not be condemned, or in any way acquired, without the consent of the owner.

5th. In holding that the defendant could not by virtue of its charter construct its railway upon land over which plaintiff had a right of way, even though defendant had permission of the owner of the land or owned the land itself.

6th. In holding that defendant could not, for the purpose of

31—33

constructing its railway, alter and change the location of Peace street, even though as good a way should be provided for those entitled to the use of Peace street.

7th. "Because his honor erred in directing the jury to find in the verdict anything else than the amount of damages they might think the plaintiff entitled to for the changing and alteration of Peace street."

It has been deemed necessary to make a much fuller statement of the proceedings below than is usually required, because, as it seems to me, there is some confusion as to the real nature and scope of the action. Even the Circuit Judge in some portions of his charge seems to have regarded it as an action to recover damages for the permanent injury done to plaintiff's own property by the construction of the railroad over and along the private right of way claimed by him in what is called Peace street, although, strictly speaking, it is not a street, but simply a private way, as is conceded on both sides. But from other remarks made in the charge, it would seem that he regarded it as an ordinary action, such as was formerly designated as an action on the case to recover damages for the obstruction of a private way. In one view of the case it would become extremely important to determine whether the present action belonged to the former or to the latter class; for if it belonged to the former, then the damages recovered would be a satisfaction of the injury complained of for all time to come, whereas if it belongs to the latter class, then the defendant would be liable to repeated actions, with ever increasing damages, as a means of forcing the removal of the nuisance. But under the view which I take of the case this question becomes immaterial.

It seems to me that when the legislature granted a charter to the defendant company, authorizing it to construct a railway between the points therein designated, it must be regarded as having conferred upon said company the right to take and condemn such lands and rights of way as might be necessary to effect the purpose, and also the right to cross or run along any highway or other way which might be encountered on the route selected between the designated termini. This is by virtue of the right of eminent domain retained by the State, the only limitation upon

which is found in sec. 23, art. I., of the Constitution, forbidding the taking of private property "for public use or for the use of corporations, or for private use, without the consent of the owner or a just compensation being made therefor." In the 13th section of the charter of the defendant company (act of 1886, 19 Stat., 697), it is provided : "That this company shall enjoy the benefits, and be subject to the provisions of sections 1550 to 1561, inclusive, of chapter 40 of the General Statutes of South Carolina, with respect to the manner of acquiring lands, or the right of way over lands required by it."

Now, it will be observed that these sections of the General Statutes just referred to do not purport to confer the right to take or condemn the property of the citizen for the construction of a railway or other structure of a like kind, under the right of eminent domain; for this is conferred by the charter of the company claiming such right, and these sections only purport to prescribe the *manner* in which this is to be done, and the mode by which the amount of compensation is to be ascertained. Hence while these sections do not in express terms refer to the taking or condemnation of a private right of way, but only speak generally of "*lands*," yet it seems to me, that the obvious intention was to include in the term "lands" all rights or easements growing thereout. Any other construction would inevitably lead either to the conclusion that the legislature did not intend to confer the right to take or condemn a private right of way for the construction of a railway, or that they intentionally provided no mode by which the owner of such private right of way could obtain compensation for the taking of his property. The former is so palpably absurd in its results as to forbid its adoption. For if the right to take or condemn a private way for the construction of a railroad has not been conferred, then it follows that when a railway company in the construction of its road reaches a private way, it must stop until it can obtain the consent of the owner of such right of way, and thus a great public enterprise may be absolutely defeated by the obstinacy of some perverse individual. The idea that land— the freehold itself—may be taken under the right of eminent domain, and yet a mere easement, growing out of or appurtenant

to the land, cannot be, seems too extraordinary—to use no harsher term—to admit of its adoption.

So, too, I cannot think that the legislature would be so grossly unjust, and so regardless of its constitutional obligations, as to omit intentionally any provision for the assessment of compensation to the owner of a private right of way taken or condemned for the use of a corporation. It seems to me, therefore, that the provisions contained in sections 1550 to 1561, prescribing the mode in which the amount of compensation to which the owner of private property may be entitled when the same is taken under the right of eminent domain, applies to all species of property that may be so taken. If this be so, then it seems to be conceded that the plaintiff's only remedy was by a proceeding under the statute to obtain compensation, and hence the present action cannot be sustained. The motion for non-suit should therefore have been granted.

But even if I am in error in this view, I do not see how the present action can be sustained. The Circuit Judge seemed to think that as no provision had been made by statute whereby the plaintiff could obtain redress for the injury alleged to have been done him, he was entitled, "under the general law of the land," to maintain this action for damages. Now, even if it be assumed that the plaintiff could not, under the provisions of sections 1550 to 1561 of the General Statutes, obtain compensation for the violation of his legal rights, yet there is a provision in the same chapter of the General Statutes which does afford him a remedy, and hence there is no necessity for his resort to "the general law of the land." Section 1531 of the General Statutes is in these words: "When a railroad is laid out across a highway *or other way*, it shall be constructed so as not to obstruct the same." Now, surely the words which I have italicized are broad enough to cover a private way; and the necessary inference from the terms of the section is that, while it is not unlawful to lay out a railroad across a private way, yet it is unlawful to lay it out in such a manner as to obstruct the same. Now, as there is no specific penalty prescribed in that section for the doing of the unlawful act there forbidden, we must look to section 1539 of the same chapter, where a specific penalty is prescribed for doing any un-

lawful act prohibited by that chapter, "where no specific penalty is hereinbefore already provided." So that, under this view of the case, it is quite clear that the plaintiff's remedy (if entitled to any) was by an action for the penalty prescribed by section 1539, and there was no warrant for an appeal to "the general law of the land;" and this we have held distinctly in the case of *Railroad Commissioners* v. *Railroad Company*, 26 S. C., 353.

There is also another ground upon which the motion for non-suit might have been granted. Referring to, but without repeating here, the precise language of the complaint set out above, the plaintiff's cause of action seems to be that defendant obstructed his right of way by erecting therein and across the same an embankment of earth from four to twelve feet high, so that plaintiff is utterly unable to pass and repass along said way. Now, there is not only an utter absence of any testimony to sustain this allegation, but, on the contrary, plaintiff's own testimony, as set out in the "Case," shows that it is not true. According to his own statement, after the road was constructed, his right of way in front of his own lot was twenty-five feet wide, and at no point was it narrower than twelve feet, and this, it would seem, left him ample means of egress from his lot to the public streets of the town of Chester. Such a variance between the *allegata* and *probata* would seem to be fatal.

It seems to me, therefore, that the judgment of this court should be, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed, and this being the opinion of the majority of this court, it is so adjudged.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* The respondent, some time in 1886, purchased a lot in the town of Chester from one W. Gill Wylie. The deed from Wylie called for Peace street as a southern boundary. This seems to have been a private way thirty feet wide, running along the southern boundary of this lot and other lots into Pine street, which is a public street of the town. Some time in 1888 the defendant, appellant, in constructing its track and building its road through the town of Chester, entered upon Peace street at its junction with Pine street, and

running, along it by lessening its width, and erecting embankments thereon, as it is alleged, obstructed it to the damage of the plaintiff, and the action below was brought to recover said damages. The principal defence set up was that if plaintiff had suffered any damages for which he was entitled to recover, his remedy was to have said damages assessed, as provided by the statute in such cases; and therefore that the present action could in no event be maintained; and upon this ground a motion for a nonsuit was made by the defendant at the close of plaintiff's testimony, which being overruled the case proceeded to a verdict for the plaintiff as follows, to wit: "We find the plaintiff has the right to the unobstructed use of Peace street and five ($5) dollars damages in this case."

His honor, the trial judge, in addition to overruling the motion for non suit, charged the jury that the injury complained of, if any, could not be redressed under the act in reference to condemnation and assessment of lands by railroads, &c., and for railroad purposes; but that the Court of Common Pleas was the only jurisdiction in which relief in such cases could be found, and that the action below was the proper and legal mode of seeking such relief. The exceptions—there being several—allege error in different phraseology to this ruling, the appellant contending that plaintiff's cause of action, if he had any, fell under the act aforesaid, which being statutory, the plaintiff was confined to the mode of procedure therein provided. So the question in the case is whether or not the act aforesaid was intended to apply to causes of action like that below.

Now, while it is true that the act in question supplies to railroad corporations the necessary machinery for acquiring rights of way over the lands of others, and also lots for the erection of depots, station houses, &c., yet there is nothing in said act which provides for the transfer, or rather the breaking up, of ways either public or private. On the contrary, section 1531 seems to contemplate that said ways shall not be seriously interfered with. That section provides that when a railroad is laid out across a highway or other way, it shall be constructed so as not to obstruct the same, thus evidently intending that there should be no injury done to such ways, or at least no such injury as would require an

assessment of the value of the way under the railroad act as to condemnation, &c. The right to cross and to run along said ways as we suppose is given, but there must be no obstruction. When, then, an obstruction is made, it is, of course, illegal and, if injury results therefrom, the party injured is entitled to redress; and not being authorized to seek his redress under the railroad act, he must, of course, apply to the Court of Common Pleas.

The first five exceptions are disposed of by what has been said above. The 6th his honor did not charge; on the contrary, he said in substance that such ways might be changed or altered, if as good a way was left. This, as it seems to us, at least, was included in the charge where his honor said: "Admitting the railroad company had the right to cross, &c., yet it must be done in such manner as not to obstruct"—in other words, a sufficient way must be left or provided. The 7th fails to raise a legal question. We think the term *other way* in the statute is sufficiently broad to cover Peace street here.

I cannot concur in the majority opinion.

Judgment reversed.