7392

## WOODSTOCK HARDWOOD AND SPOOL MFG. CO. v. CHARLESTON LIGHT AND WATER CO.

1. DAMAGES—CONDEMNATION—WORDS AND PHRASES.—In this case it was error to instruct jury they should find damages for total injury to plaintiff's business, without reference to the condemnation proceedings, since in the former decree of this Court the damages were limited to the commencement of condemnation proceedings, which applies to damages of a "lessee," for the word "owner" in the statute applies to a tenant for life, a lessee for years, and to any one having an interest in the property as well as the "owner," but this error is cured by the stipulation of counsel that all damages to plaintiff should be assessed in this verdict.

2. IBID.—RENTS—ISSUES.—It was error to submit to jury rents as an element of damages, but it was harmless as there was no evidence of loss of rents here.

3. IBID.—TIMBER—IBID.—LESSEE.—Injury to timber, so far as it affected the interest of this plaintiff as lessee, was properly sent to jury as an element of damages.

4. IBID.—OVERFLOWING LANDS.—A party making no request to charge on the point cannot be heard to insist that the Judge should have modified his instruction that injury to a business caused by unhealthy conditions, produced by unlawful flooding of lands, is an element of damages so as to exclude remote damages and others common to the entire community.

5. IBID.—EVIDENCE.—Such claim may be shown by proof that all of plaintiff's employees were sick while the lands were flooded and it was thus prevented from filling orders, but employees should not testify they would have quit the plaintiff's employment or would not have entered it for that reason. But its admission here proved harmless.

6. IBID.—IBID.—CORPORATIONS.—Here it would have been proper to permit evidence on cross-examination as to the amount of capital stock of plaintiff as tending to show the value of its business, but its refusal was harmless, and the evidence as to the value and extent of its business was fully stated.

Before KLUGH, J., Berkeley, September term, 1907. Affirmed.

Action by the Woodstock Hardwood Spool Mfg. Co. against Charleston Light and Water Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mitchell, Whaley & Bissell, H. K. Jenkins* and *E. J. Dennis,* for appellant.

*Messrs. Mitchell, Whaley & Bissell,* cite: *Appellant was not a tresspasser:* 10 Ency., 1111, 1114; 21 Ency., 737; 35 S. C., 488, 501. *Instruction to award more than actual damage is error:* 28 Ency., 605. *Injury must be direct:* 30 S. C., 539; 1 Hill., 365; 3 S. C., 447; 46 S. C., 377; 68 S. C., 540; 54 S. C., 242. *Evidence as to capital stock:* 16 S. C., 556; 25 S. C., 322; 29 S. C., 518; 30 S. C., 497; 35 S. C., 197; 38 S. C., 258; 33 S. C., 44. *Condemnation*

*covers all damages*:   8 Ency., 684; 5 Rich., 584; 11 Rich., 239; 15 S. C., 487; 33 S. C., 477; 62 S. C., 52.

*Messrs. J. Lamb Perry, Mitchell & Smith, Jervey & Cohen* and *J. O. Edwards,* contra.  *Mr. Smith* cites: *Rule of damages when injury is permanent*:   Gould on Waters, Sec. 416; 59 N. W., 928; 43 S. W., 63; 24 S. E., 731; 45 S. E., 489; 30 N. W., 173.  *Only one action allowed*: 107 Mass., 352; 137 Mass., 334; 137 U. S., 568.  *Alleged error in charge as to punitive damages cannot be considered:* 78 S. C., 551; 60 S. C., 390; 74 S. C., 318, 135; 81 S. C., 218; 78 S. C., 551.

November 29, 1909.  The opinion of the Court was delivered by

Mr. Justice Woods.   This is an appeal from a judgment of $25,000 recovered by the plaintiff against the defendant for damages alleged to have been inflicted on the plaintiff by the erection of a dam on Goose Creek, which flooded the lands leased to the plaintiff, injured its timber and destroyed its business.  This appeal is the culmination of a litigation which has taken such varying forms that in order to present the real issues an extended statement of facts is necessary, and logical sequence in making the statement requires repetition in condensed form of the statement already set out in the former appeal, 76 S. C., 95.  The bearing of the facts will be better understood by having in mind that one of the main issues in the appeal depends on the construction to be placed on certain stipulations of counsel, which will be hereafter set forth.

The defendant, Charleston Light & Water Company, was chartered by an act approved 19th February, 1898, 22 Stat., 934, for the purpose as expressed in the act, "of introducing a water and light supply in the city of Charleston for its public purposes."  The special rights deemed essential to the general purposes of incorporation are conferred with

some particularity, and among those enumerated are the rights to build dams and to condemn property. Afterwards by an act passed in 1905, special authority to construct a dam across Goose Creek was conferred with a proviso that the company should "be liable for all such damages as may be established in any court of competent jurisdiction by any landowner claiming that his land has been damaged by reason of the erection of the said dam."

On or about the 7th of February, 1906, the Ingleside Mining and Manufacturing Company, as the owner of a large tract of land, brought an action for damages against the Charleston Light & Water Company for flooding its lands. At the same time, the Woodstock Hardwood & Spool Manufacturing Company brought its action against the Charleston Light & Water Company for flooding some of the same lands which it had leased from the Ingleside Mining & Manufacturing Company. In both these actions, the claim for damages was limited to the year 1905, and in both of them the plaintiffs asked for the relief of injunction, as well as damages. The Charleston Light & Water Company in its answers set up its statutory rights and franchises, but admitted flooding a small portion of the land.

While these actions were pending, the Charleston Light & Water Company instituted proceedings under the statute against both the Ingleside Company and the Woodstock Company to condemn the property required for its purposes, as set out in its charter. To the notice of intention to condemn, the Ingleside Company and the Woodstock Company both responded, denying the right of condemnation; and thereafter in April, 1906, united in an action against the Charleston Light & Water Company to enjoin the proceedings, alleging as grounds for relief sought: (1) that the purpose of the proceedings was to take away from them "their rights of action for damages already occasioned and still being occasioned by the trespass aforesaid," and (2) that the defendant had lost its right to institute condemna-

tion proceedings by entering upon and taking possession of the land as a trespasser without first taking steps to condemn in the manner authorized by law. The defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, in that "the alleged trespass by the defendant upon the lands of the plaintiffs anterior to the proceedings to condemn, the institution of actions at law by the plaintiffs, and the other alleged facts set forth in the complaint, do not prevent the institution of proceedings to condemn by the defendant, nor entitle the plaintiffs to the relief prayed for."

The Circuit Judge overruled the demurrer and enjoined the condemnation proceedings until the determination of the plaintiffs' actions for damages. From this order of injunction there was an appeal, which resulted in a judgment of this Court; "that the judgment of the Circuit Court be reversed, and the injunction dissolved without prejudice to the plaintiffs to recover in their actions in the Court of Common Pleas, such damages for any trespass on their property and consequent injury to them up to the time the condemnation proceedings were instituted, as are within the purview of the complaint, and not recoverable under the condemnation proceedings; and without prejudice to any right the plaintiffs may have to apply for injunctions against the defendant in aid of the collection of any judgments they may recover in such actions."

While the appeal just recited was pending the Ingleside Company brought its action against the Charleston Light & Water Company for the entire damage done to its property by the maintenance of the dam. At the same time, the Woodstock Company brought its separate action for the entire damage to its property, alleging the effect of the obstruction of the water to be: "that this plaintiff has been compelled to abandon its business at Woodstock aforesaid, and abandon and give up its buildings and timber and remove all its machinery and business, to its damage forty

thousand dollars." No injunction was sought in either of these actions, and it is clear from this fact, and from the language of the complaint just quoted, that the plaintiffs meant to express their election to seek judgment for damages and abandon any demand for injunction.

The two actions of the Woodstock Company for damages were first tried together under the written stipulations of counsel, and resulted in a verdict and judgment in favor of the plaintiff for $25,000. The appeal is from this judgment, and the first point made, is that the Circuit Judge erred in charging the jury that they had nothing to do with the condemnation proceedings, and that their verdict should embrace all damages inflicted by defendant on the plaintiff, including that which might be due to the plaintiff being permanently deprived of its property. This instruction was clearly contrary to the opinion rendered by this Court in the former appeal in the litigation between the same parties which involved the identical question; for it was adjudged in the former appeal that the plaintiffs were entitled to recover in their actions such damages for trespass on their property and consequent injury to them, as accrued up to the time condemnation proceedings were instituted by the defendant, and as were within the purview of the complaint, and not recoverable under condemnation proceedings; that the damages accruing after the condemnation proceedings were instituted were to be assessed under such condemnation proceedings and were not recoverable in the actions for damages. The position contended for, that this could apply only to the Ingleside Company because that company was the sole owner of the land, is not tenable. The word "owner," as used in the statute, embraces not only the owner of the fee, but a tenant for life and a lessee for years and any other person who has an interest in the property, which will be affected by the condemnation. *Ross* v. *R. R.,* 33 S. C., 477, 12 S. E., 101; *Charleston & W. C. Ry.*

*Co., v. Reynolds,* 69 S. C., 481, 48 S. E., 476; *Ellis* v. *Welsh,* 6 Mass., 251; *Parks* v. *Boston,* 15 Pick., 198; *Watson* v. *N: Y. Central R. R. Co.,* 47 N. Y., 161; *R. R. Co.* v. *Williams,* 54 Pa. St., 109; 3 Elliott on Railroads, secs. 1023, 1025; Pierce on Railroads, 185; Lewis on Eminent Domain, sec. 335; 10 A. & E. Enc. of Law, 1194. Hence the judgment of the Court on this point applied as fully to the Woodstock Company, the lessee, as to the Ingleside Company, the owner of the fee. The charge of the Circuit Judge being thus contrary to the judgment of this Court on a material issue, a reversal would necessarily follow, unless the defendant voluntarily waived its right and in effect agreed that the entire damages should be fixed by verdict of the jury in the trial of the actions for damages. This brings us to the consideration of the meaning of the stipulations entered into by counsel.

Under the title of the Woodstock Company's actions, the stipulation was as follows:

"State of South Carolina, Berkeley County.

"Woodstock Hardwood and Spool Manufacturing Company, plaintiff, against

"Charleston Light & Water Company, defendant. Action for damages served 8th February, 1906.

"Same against same. Action for damages served 20th July, 1906.

"It is hereby stipulated and agreed that the two above mentioned and entitled causes be consolidated and tried together as one action and the verdict rendered by the jury shall be in full of all the damages that should be awarded in these two actions.

"J. Lamb Perry,
"Mitchell & Smith,
    Plaintiff's Attorneys.
"Miller & Whaley,
    Defendant's Attorneys."

"Charleston, S. C., April 20th, 1907." Clearly, "the damages that should be awarded in those two actions" were the damages to be awarded under the former decree of this Court, excluding the damages which accrued subsequent to the institution of the condemnation proceedings. The stipulation standing alone, therefore, could have no effect to alter or waive the defendant's rights, as fixed by the former decree. But before the trial was entered upon, the announcement was made to the Court that the two actions of the Woodstock Company for damages would be tried together, not only under the above stipulation in those cases but under the following stipulation entered into with respect to the actions of the Ingleside Company and the condemnation proceedings:

"State of South Carolina, Berkeley County. In the Court of Common Pleas.

"The Ingleside Mining & Manufacturing Company, plaintiff, against

"The Charleston Light & Water Company, defendant. Action for damages served 8th February, 1906.

"Same against same. Action for damages served 20th July, 1906.

"The Charleston Light & Water Company, plaintiff, against

"Ingleside Mining & Manufacturing Company and the Woodstock Hardwood & Spool Manufacturing Company, defendants. Proceedings for condemnation.

"It is hereby stipulated and agreed that the three above entitled proceedings shall be tried together at the same time, and that the verdict rendered by the jury in the three proceedings so tried together shall be in full of all the damages that should be awarded in the two first above entitled causes and also in full of the damages that should be awarded in the condemnation proceedings, so that the effect of the verdict and judgment when paid will be to vest in the Charleston Light & Water Company the title to the

land sought to be condemned in the condemnation proceedings as fully as if the condemnation proceedings had been carried on separately. The jury in framing their verdict to base it upon the damages that should be awarded in the two causes of action set up in the actions at law, adding thereto the damage occasioned by such condemnation.

> "J. Lamb Perry,
> "Mitchell & Smith,
>          Plaintiff's Attorneys.

"Charleston, S. C., April 20th, 1907.

> "Miller & Whaley,
>          Defendant's Attorneys."

The record also contains this statement: "Before going into the trial, it was stated to the presiding judge by the attorneys of the plaintiff, without dissent from the defendant's attorneys, that the only cases which were now for trial were the two actions brought in behalf of the Woodstock Hardwood & Spool Manufacturing Company, mentioned in the stipulation first above set forth, and that the actions brought in behalf of the Ingleside Mining & Manufacturing Company, together with the condemnation proceedings brought by the Charleston Light & Water Company, were not for trial before that jury."

Reading the two stipulations together, it appears that they cover every case and proceeding, which we have set out, pending between the Woodstock Company, the Ingleside Company and the Charleston Light & Water Company; and that by them the parties meant to dispose of the litigation in every form it had assumed by two jury trials. The puzzling feature of the stipulations is, that while the Woodstock Company was a party to the condemnation proceedings and entitled to have assessed thereunder damages which accrued after these proceedings were instituted, the stipulations provide that all these damages shall be embraced in the jury's verdict in the actions of the Ingleside Company. If it be assumed that the parties meant to hold

any of their rights of procedure fixed by the former decree of this Court, the language of the stipulations can mean nothing else than that the Woodstock Company was to recover for the damage inflicted on it up to the condemnation proceedings and receive nothing for the damage inflicted afterwards; while the Ingleside Company was to recover for all damage inflicted on it, and in addition for the damage inflicted on the Woodstock Company after the condemnation proceedings were instituted. Certainly, no such absurd result as that was contemplated. Careful examination of the entire record leads to the conclusion that all parties meant to waive their rights of procedure as fixed in the former appeal, and agree that all the damage to the Woodstock Company should be determined by the verdict of the jury rendered in its actions for damages; and that all the damage to the Ingleside Company should be settled in the verdict of the jury rendered in its separate actions for damages; and that the condemnation proceedings were embraced in the stipulation of the Ingleside Company, because it was the owner of the land, and the Woodstock Company had either abandoned or was about to abandon all use of the land under its lease. This conclusion is much strengthened by the fact that the cases of the Woodstock Company were tried on that theory, without the slightest indication to the Court from counsel for defendant that the verdict should be limited to damages which accrued up to the commencement of the condemnation proceedings. For these reasons we think after the reargument, the conclusions of Chief Justice Pope in his opinion rendered on the former hearing of this appeal were correct, and the exceptions on this point should be overruled.

While it may be that some of the expressions of the Circuit Judge as to the kind of damages recoverable might have been omitted, he did not charge the request as to punitive damages submitted by plaintiff's counsel, but, on the

contrary, expressly limited the recovery to actual damages. The exceptions on this point cannot be sustained.

The defendant sets out several specifications of error in the following request of the plaintiff given to the jury by the Court: "That for a violent or unlawful trespass the trespasser is responsible in damages in such amount as the jury may think proper under the circumstances; that in these proceedings the jury are authorized to consider the following elements of damage namely: The loss of rents and income, the damage and injury done to timber on the land and the general injury and damage done to timber as a whole by flooding of a part of it or rendering it more expensive to obtain, and in addition the jury are to consider the value of the buildings, machinery and business of the plaintiff and the damage, if any, inflicted on the plaintiff by the loss of the same, or any part of it, whether occasioned by the flooding itself or the unhealthiness and sickness thereby occasioned." The plaintiff's action was not for rents, and for that reason rents were not recoverable. The Court, therefore, erred in submitting to the jury any question of rents. But the error could not have been prejudicial, for there was no evidence relating to rents. On the contrary, the entire testimony was on the issue of damage to the plaintiff in the destruction of timber, and the interruption and destruction of its business. It should not be assumed that the jury capriciously guessed at rents in order to include them.

As to the point that the injury to the timber should not have entered into the verdict, because the plaintiffs were only lessees and not owners of the timber, it is enough to say that the injury to the timber, in so far as it affected the plaintiff's interests as lessee, was clearly a factor properly entering into the estimate of damage. If a more accurate statement from the Court on this subject was desired by the defendant, it should have been requested.

We do not understand defendant's counsel to deny that injury to plaintiff's business, arising from unhealthy conditions produced by defendant's flooding plaintiff's land, would be an element of damage to be included in the verdict. But the contention is, that the general instruction to that effect in the charge should have been so modified and limited as to exclude remote damages and those which were common to the entire community. The Court having stated the general principle of law correctly, and the defendant having presented no request for further instructions, there is no ground of complaint.

On the same general principle that the plaintiff could show injury to its business by showing the unhealthy conditions produced by defendant's tort, it was competent for the plaintiff to introduce evidence that all its hands were sick in the year 1905, when the land was flooded; and that the plaintiff was prevented by sickness of its employees from filling orders from its customers. The employees of plaintiff should not have been allowed to testify that they would have quit the employment of the Woodstock Company on account of the unhealthy conditions or would not have entered its employment for that reason if it had continued its business at the place where the land was flooded. This testimony was speculative and incompetent. It is not conceivable, however, that it could have had any material effect on the jury, for the conditions existing before and after the flooding of the land were placed before the jury by many witnesses on both sides.

So, also, we think it would have been better to allow counsel for defendant to elicit on cross-examination a statement of the capital stock of the plaintiff company, because the question on that point was fairly within the limits of cross-examination, and had some tendency to indicate the value of plaintiff's business. But the limits of cross-examination must be left largely to the discretion of the trial Judge; and in this instance, the

direct testimony as to the value and extent of the plaintiff's business was very full.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.