## DUKE POWER CO. v. RUTLAND.
### No. 3179.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

On Rehearing Aug. 1, 1932.

C. C. Wyche, of Spartanburg, S. C. (Donald Russell, of Spartanburg, S. C., on the brief), for appellant and cross-appellee.

Jesse W. Boyd, of Spartanburg, S. C. (Horace L. Bomar, of Spartanburg, S. C., on the brief), for appellee and cross-appellant.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action, originally instituted on February 12, 1930, in the court of common pleas for Spartanburg county, S. C., and subsequently removed to the United States District Court for the Western District of South Carolina, was brought by L. H. Rutland against the Duke Power Company to recover damages for the invasion of his property rights in a tract of land near the city limits of the town of Spartanburg, S. C., by the appropriation and use of the land for the erection and maintenance of a pole line for the transmission of electric current. Both parties claimed title from the same original source; and the case turns on the question whether the Manufacturers' Power Company, the predecessor in title of the defendant below, acquired good title to the easement under the laws of South Carolina. For the sake of simplicity, both companies will be hereinafter called the power company.

The West Side Cemetery Company formerly owned the land in fee, and on March 12, 1925, executed a mortgage upon it to Caroline Du Rant, executrix of the estate of Alice M. Lee. The mortgage was recorded on March 18, 1925. Thereafter, by reason of a deed from the cemetery company and certain subsequent mesne conveyances, in each of which the grantee assumed the mortgage, the fee-simple title to the land devolved upon John W. Bell and Sarah A. Bell, his wife, as tenants in common. On February 16, 1926, while the Bells were in possession of the land, John W. Bell, for $400, made a deed of a right of way over the property to the power company; but the deed was not recorded until July 2, 1926. Mrs. Bell did not join in the deed; but she knew of the transaction and made no objection. The power company entered upon the land and constructed the pole line, finishing it on June 26, 1926. In the meantime, to wit, on June 17, 1926, the mortgage being in default, foreclosure proceedings were instituted, to which all of the persons in the chain of title, from the cemetery company to Bell, were made parties. On July 29, 1926, a decree of foreclosure was entered, and on September 6, 1926, there was a foreclosure sale at which the property was purchased by J. T. Montgomery. His title, by certain sub-

sequent mesne conveyances, devolved upon L. H. Rutland, the plaintiff below.

At the trial in the District Court, the District Judge instructed the jury that the power company acquired good title to an undivided one-half interest in the easement by the deed from John W. Bell; but that since Sarah A. Bell, his wife, did not join in the deed, the power company did not acquire the remaining one-half and that the title to the land was held by Rutland, subject only to the undivided one-half interest which John W. Bell had conveyed. Both parties appealed from the judgment.

The contention of Rutland is that his title is superior to the easement claimed by the power company because his interest was derived through mesne conveyances from the purchaser at the mortgage sale, under the foreclosure of a mortgage which was executed and recorded prior to the deed from Bell to the power company. Under the terms of section 388 of the South Carolina Code of Civil Procedure, the power company, as the holder of a conveyance recorded subsequently to the mortgage, was bound by the foreclosure proceedings. Therein the land was sold, without reservation, to Montgomery, and Bell's title was extinguished. The power company does not contend that the deed from Bell to the power company could affect the rights of the mortgagee, or those claiming title through the foreclosure proceedings. It rests its title to the easement upon the contention that its entry upon the land and the erection and maintenance of the line were authorized by the Bells, who had legal title to the property at the time; that the mortgagee, and those claiming under her, were bound to enforce whatever rights they had to compensation, in the manner prescribed by the statutes of South Carolina, whereby the power company was clothed with the power of eminent domain; and that none of them took appropriate action to secure compensation for the taking within the time prescribed by the statute, and hence the present action is barred.

The statutes of South Carolina, whereby the power of eminent domain is conferred upon railroad companies, are codified in sections 4990 to 5014 of article 10 of chapter 52 of the South Carolina Code of 1922, and the same powers are conferred upon power companies by sections 5024 and 5016. Sections 4990, 4991, and 4999, upon which the power company specially relies in this case, are as follows:

"4990. Whenever any person or corporation shall be authorized by charter to construct a railway, canal or turnpike in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give the owner thereof (if he be sui juris) notice, in writing, that the right of way over said lands is required for such purpose, which notice shall be given at least thirty days before entering upon said lands; and such notice shall be served upon such owner in the same manner as may be required by law for the service of the summons in civil actions. If the owner shall not, within the period of thirty days after service of said notice, signify, in writing, his refusal or consent, it shall be presumed that such consent is given; and such person or corporation may thereupon enter upon said lands; but the owner of said lands may move for an assessment of compensation in the manner hereinafter directed."

"4991. If the owner of said lands shall signify his refusal of consent to entry thereon without previous compensation, or shall remain silent in reference thereto, the person or corporation requiring such right of way shall apply, by petition, to the Judge of the Circuit wherein such lands are situated, for the empanelling of a jury to ascertain the amount which shall be paid as just compensation for the right of way required. * * *"

"4999. Nothing herein contained shall be construed to prevent entry upon any lands for purposes of survey and location; and if in any case the owner of any lands shall permit the person or corporation requiring the right of way over the same to enter upon the construction of the highway without previous compensation, the said owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same in the manner hereinbefore directed: Provided, Such petition shall be filed within twelve months after the highway shall have been completed through his or her lands."

These statutes provide only for the acquisition of the interests of owners of land wherein the corporations desire to acquire rights of way. Thus in section 4990 it is provided that the company, before entering upon any land for purposes of condemnation, must give the owner notice in writing that a right of way is required, and the owner is given 30 days, after service of notice, to signify his refusal or consent. Provision is made in sections 4990 and 4991 for an assessment of compensation to the owner for the right of way taken. Section 4999 relates to the case of an owner who permits a corporation, re-

quiring a right of way, to enter upon the work of construction, without previous compensation, and gives the owner the right, after the construction has been finished, to demand compensation and petition for an assessment in the manner provided by the preceding sections, upon the condition, however, that the petition shall be filed within twelve months after the construction has been completed through his land. The power company insists that the mortgagee in this case was such an owner, and points out that no petition for compensation was filed within twelve months after June 26, 1926, when the pole line was finished.

The authorities upon the question of whether a mortgagee is an owner under the terms of the condemnation statutes are in some confusion, Lewis on Eminent Domain (3d Ed.) §§ 523 and 540; and the question here is complicated by the South Carolina rule that a mortgagee is merely a lienholder, clothed with an equitable interest in the premises. Navassa Guano Co. v. Richardson, 26 S. C. 401, 2 S. E. 307; Union Nat. Bank v. Cook, 110 S. C. 99, 96 S. E. 484; 20 Corpus Juris, 856, 922; Halpin v. Savannah River Electric Co. (C. C. A.) 41 F.(2d) 329, 331. Lewis states that, under the weight of authority, the word "property" in the statutes should be construed to include every right and interest which a person has in land, and that the word "owner" should be held to include every person entitled to such a right or interest; and that such an interpretation is in harmony with the spirit of the usual constitutional provisions that private property shall not be taken for public use without just compensation, and that no person shall be deprived of his property without due process of law. Constitution of South Carolina, article 1, §§ 5 and 17.

The Supreme Court of South Carolina has never passed directly upon the precise point, but it has indicated that the spirit of the law requires a broad and liberal construction so as to protect all persons interested in the land to be taken. Thus it was said by Mr. Justice Woods, formerly of this court, in his concurring opinion in Charleston & W. C. Ry. Co. v. Reynolds, 69 S. C. 481, 48 S. E. 476, 487, in holding that a contingent remainderman was an owner within the terms of the statute: "It seems very obvious that the General Assembly, in enacting the condemnation statute, must have intended to provide a method by which every person interested in the land should have the value of his interest judicially ascertained and paid for, and that the corporation should be able to obtain a perfect title once for all, and not be forced to have its title clouded, and its business, in which the public is interested in so many ways, liable to interruption by future claims to the property. To carry out this design, the broadest and most extensive signification should be given to the term 'owner' wherever it occurs in the act, and it should be held to embrace all who have any interest in the land, present or future, vested or contingent—any interest or estate which the law regards of sufficient value for judicial recognition. It takes the sum of all these interests to make the fee, and all must be taken together to constitute full ownership."

See, also, Cayce Land Co. v. Southern Ry. Co., 111 S. C. 115, 96 S. E. 725; Woodstock Hardwood Co. v. Charleston L. & W. Co., 84 S. C. 306, 66 S. E. 194; Ross v. R. Co., 33 S. C. 477, 12 S. E. 101.

We shall therefore assume, for the purpose of this case, as the power company contends, that a mortgagee, under the law of South Carolina, has such an interest in the land covered by the mortgage as entitles him to be considered an owner, within the meaning of the condemnation statutes of the state. Does it follow that the plaintiff in this case is barred from asserting the rights acquired through the foreclosure proceedings because no petition for compensation was filed within twelve months after the construction work was completed? We think not. Judge Woods pointed out in Charleston & W. C. Ry. Co. v. Reynolds, 69 S. C. 481, 48 S. E. 476, 488, supra, that section 4999 pertained only to landowners who had permitted the company to enter upon the construction work without previous compensation. He said: "The statute allows only two classes of landowners to prosecute condemnation proceedings: (1) Those on whom the railroad company has served notice under section 2187 of the Civil Code of 1902 [now section 4990, supra], and who have allowed the company to enter without signifying their refusal or their consent; and (2) those who, in the absence of the formal statutory notice, have permitted the company to enter upon the construction of the railroad through their lands without previous compensation. These remaindermen never having been served with notice by the railroad company, and having been infants at the time of construction incapable of giving permission to the company to enter, the statute provides no remedy for them, and hence they are not barred by failure to institute proceedings under the condemnation statute with-

in one year after completion of the road through the land. They really had no remedy except an ordinary action for damages, and this would not be barred until six years after the falling in of the life estate."

So it is clear that a suit for compensation is not barred before the expiration of six years, unless it may be said that the mortgagee permitted the power company to enter upon the land. To show such permission, the power company says that the mortgagee had constructive notice of the fact that it required the land for a right of way, by reason of the recording of the deed from Bell on July 2, 1926; and also that she had actual notice by reason of the open, public, physical entry and occupation of the land by the corporation. But these assertions will not bear inspection. We are not satisfied that the constructive notice of the deed would charge the mortgagee with such knowledge of the proposed work, as to warrant an inference of permission, from the failure of the mortgagee to object. But even if we should attribute such a result to constructive notice, it would not avail the power company in this case, for the proof shows that the entry had taken place and the pole line had been finished on June 26, 1926, six days before the deed was recorded. Nor is there any evidence in the record of actual notice. The nearest approach is evidence that the mortgagee resided in the city of Spartanburg during the year 1926, and that the land in question lies just beyond the city limits. It needs no discussion to show that this fact does not establish actual knowledge on her part of the enterprise.

The landowner was not barred by lapse of time. He had the right to sue for compensation, since he did not come within the terms of the statute. It was said in Charleston & W. C. Ry. Co. v. Reynolds, 69 S. C. 481, 48 S. E. 476, 485, supra, as follows: "By these authorities it is established in this state that where the right of compensation to a landowner for a right of way over his lands is denied by a railway company wishing such right of way, the statutes of this state providing the machinery for determining the compensation to be paid for such right of way do not provide any means to try the right. But our court of common pleas, having a general jurisdiction, has the power to try such right. Cureton v. R. R. Co. [59 S. C. 371, 37 S. E. 914], supra; R. R. Co. v. Burton [63 S. C. 348, 41 S. E. 451], supra. Thus it is made manifest that the landowner is not dependent alone upon the condemnation statutes, for, if the railroad denies his right to compensation, and he does not fall within the terms of such condemnation statutes, he may have his right tried elsewhere."

See, also, Townes v. City Council, 52 S. C. 396, 29 S. E. 851; Hardin v. City of Greenville, 161 S. C. 53, 159 S. E. 465.

[3] The measure of damages should be determined by the law of South Carolina. It was hardly touched upon in the presentation of the case to us, and it need not now be decided. The question of title, in which the parties were chiefly interested, has been settled in this opinion, and the case must be remanded for further proceedings in accordance therewith.

Reversed and remanded.

### On Rehearing.

J. H. Marion, of Charlotte, N. C. (C. C. Wyche, Donald Russell, and Sam J. Nicholls, all of Spartanburg, S. C., on the brief), for appellant and cross-appellee.

Horace L. Bomar and Jesse W. Boyd, both of Spartanburg, S. C., for appellee and cross-appellant.

SOPER, Circuit Judge.

■ A point has been raised upon the rehearing of this cause, not raised upon the original hearing, viz., that the right to claim compensation for the taking by the power company was a personal right belonging to the owner of the land at the time of the taking, which did not pass to the plaintiff Rutland. We think that this point must be sustained. We need not, and do not, pass upon the question as to whether the rights of the mortgagee to compensation upon the construction of the power line passed to the purchaser in foreclosure. Even if it be assumed that the deed under foreclosure conveyed to the purchaser at the foreclosure sale the title which the mortgagor possessed at the time of the execution of the mortgage, it is clear that such purchaser was not entitled to eject the company from the premises but merely to recover compensation for the easement taken. Cureton v. S. R. R. Co., 59 S. C. 371, 37 S. E. 914; Bridges v. Southern Ry. Co., 86 S. C. 267, 68 S. E. 551, Ann. Cas. 1912A, 1056; Moore v. N. & S. C. R. Co., 94 S. C. 243, 77 S. E. 926; Cayce Land Co. v. Southern Ry. Co., 111 S. C. 115, 96 S. E. 725, 727–728. But this right, assuming that it existed, was personal to the purchaser at the foreclosure sale, and did not pass with a conveyance of the land. Nicholls on Eminent Domain (2d Ed.) 1154; Lewis,

Eminent Domain (3d Ed.) 517; 20 C. J. 858; Bridges v. R. R., supra; Northwestern R. Co. v. Colclough, 89 S. C. 555, 72 S. E. 494; Goodale v. Sowell, 62 S. C. 516, 40 S. E. 970, 973; Kindred v. Union Pac. R. Co., 225 U. S. 582, 32 S. Ct. 780, 56 L. Ed. 1216; Roberts v. Northern Pacific R. Co., 158 U. S. 1, 15 S. Ct. 756, 758, 39 L. Ed. 873. The rule is thus stated by Mr. Justice Shiras in the case last cited: "It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burden of the railroad; and the right to payment from the railroad company if it entered by virtue of an agreement to pay, or to damages if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

██ The plaintiff cannot recover compensation for the easement taken, because this right did not pass with the mesne conveyances between him and the purchaser at the foreclosure sale. He cannot recover in trespass or ejectment because the occupancy of the power company is not wrongful. It follows that the record does not establish any right of recovery whatever in favor of plaintiff.

Reversed and remanded.