16434

PELOT v. DAVISON-PAXON CO., *ET AL.*
(62 S. E. (2d) 95)

190

*Messrs. Robinson, Robinson & Dreher,* of Columbia, and *Julian Hennig, Jr.,* of Columbia, *of Counsel, for Appellant,*

*Messrs. Gary Paschal* and *John W. Sholenberger,* of Columbia, *for Respondent,*

November 21, 1950.

TAYLOR, Justice.

The respondent, a Negro woman, brought this action in the Court of Common Pleas for Richland County for damages occasioned by reason of slanderous remarks made in the following particulars as alleged in the complaint:

"3. That heretofore in the forenoon on or about the 29th day of May, 1948, the plaintiff was shopping in the defendant Davison-Paxon Co.'s Columbia, S. C., Store and had made several purchases prior to leaving the store. That after completing her purchases she walked out of said store and had walked a short distance South on Main Street, a principal thoroughfare of the City of Columbia, when she was accosted by the defendant Laurence C. Howard and a City Police Officer, and said defendant Laurence C. Howard then and there did make the following malicious and slanderous accusation against the plaintiff: 'Where are those panties you stole.' That said statement and charge was made by the defendant Laurence C. Howard in his capacity as manager of the defendant Davison-Paxon Co. while engaged in the actual scope and course of his authority as an agent and servant of said company; that at the time the above statement and charge was made against the plaintiff, the City Police Officer was present and heard the charge made, and that thereafter the City Police Officer demanded that the plaintiff accompany he and the manager back into the store of the defendant.

"4. That after returning to the store as above mentioned the plaintiff was conducted to a counter in said store where women's lingerie was offered for sale, and there and then upon the command of the defendant Laurence C. Howard a clerk who was an agent and servant of the defendant Davison-Paxon Co. said, 'I saw you take them and put them under your left arm.' That this statement and charge was made by said agent and servant while engaged in the actual scope and course of her authority and in the presence of W. P. Cook, the Police Officer, the defendant Laurence C. Howard, a clerk the name of whom is unknown to the plaintiff but who was working for the defendant, Davison-Paxon Co., and Blanche Pearson.

"5. That when each of these statements were made, both on the street and in the store, there were numerous and sundry persons present who could have overheard the charges made against the plaintiff and did observe that the plaintiff was in the custody of a Police Officer; that said statements were made in such a negligent, willful and careless manner and under such circumstances as to openly, publicly and maliciously charge the plaintiff with the crime of theft and held her up to public contempt and shame.

"6. That the plaintiff after being accused by the defendant Laurence C. Howard, removed her coat and offered to submit to a search to prove her innocence and the Police Officer then and there refused to make a search and refused to place charges of any nature against the plaintiff. That the plaintiff suffering under these humiliations and in a highly nervous and anguished condition left the store of the defendants and proceeded down the Main Street of the City of Columbia where she met her parents and after informing her parents of the occurrences returned to the store of the defendants with her father who courteously contacted the defendant Laurence C. Howard and asked him for an explanation of the affair. The defendant Laurence C. Howard refused an explanation and refused any apology whatsoever."

The case came on to be heard before the Honorable T. B. Greneker and a jury on November 29, 1949, which resulted in a verdict for the respondent against both defendants for $1,000.00 actual damages and $1,000.00 punitive damages.

Appellants' motion for judgment *non obstante veredicto* having been denied they now appeal to this Court upon exceptions which present the following questions:

I. Was there error in refusing appellants' motion for judgment *non obstante veredicto* in that appellants were making a *bona fide* investigation and did not act with malice or exceed the bounds of privilege?

II. Did the Court err in defining the malice necessary to exceed the defense of qualified privilege and not submitting to the jury the question of punitive damages based on this defense?

III. Did the Court err in charging the jury that the words spoken were actionable *per se* and that plaintiff could recover without further proof?

IV. Was there error in charging the jury that if defendants undertook to justify the slander and failed because the justification was unsupported by the evidence, the jury might consider this on the issue of damages?

V. Was there error in charging the jury that they could conclude that there was publication to a witness even though the witness testified that she had not heard?

VI. Did the Court err in instructing the jury to the effect that they could bring a verdict against both defendants?

Respondent testified that she has lived in the City of Columbia for fifteen years, during thirteen of which she has been employed as a teacher in one of the schools of that City. On a rainy Saturday, May 29, 1948, she went to the Davison-Paxon Store located on Main Street to do some shopping. She purchased some underwear, a compact, and a black plastic handbag. Her purchases were all made from dif-

ferent clerks since the items were in different departments. Her first purchase was two pairs of panties for which she paid the clerk $1.00 and while waiting to receive the package, she stepped over to a nearby table to look at some compacts displayed thereon. While there selecting a compact, the saleslady brought her package. She made her selection of a compact, being assisted by another clerk, and while waiting on her change, she noticed a full-page advertisement in a newspaper calling attention, among other things, to some dresses which appellant had for sale, these being located on the second floor. After discussing this item with the saleslady and receiving the compact together iwth her change, she proceeded to the second boor and looked briefly at the dresses on display. From there she looked at some teen-age dresses on the same floor and proceeded back to the first floor, where she purchased from a third saleslady a black plastic handbag for $2.98 plus tax. She then left the store by way of the main entrance and started south on Main Street.

When she was in front of the adjacent store looking in the display window, she was approached by a City Policeman and another man whom she later learned was Mr. L. O. Howard, manager of the Davison-Paxon Store, who asked, her, "Where are those panties you stole from the store?" She informed him that she had two pairs in the bag which she had just purchased. Mr. Howard then stated: "Two of my clerks saw you when you stole some panties from the counter."

The three of them then went back to the Davison-Paxon Store to the clerk who sold her the underwear. Mr. Howard then took the bag from her and gave it to the clerk who looked in the bag and found the items, which had previously been purchased, together with the sales slip therefor. The clerk then charged that she had seen the respondent steal some underwear from the counter and place it under her left coat sleeve and stated that, as it was raining, she was

wearing a raincoat around her shoulders. She then removed her raincoat to show that this was not correct. The manager then inquired as to what she had in her handbag and everything was taken out of the handbag and placed on the counter. He then stated: "You must have gotten rid of them when you went upstairs." A search was made upstairs and nothing found.

Mr. Howard then stated, "We won't make a case against her this time. * * * Let this be a warning to you." Whereupon she inquired, "A warning of what?" He then stated, "I have suspected you for a long time. * * * You shop in a peculiar manner." When she inquired of him what he meant by that statement he stated, "When you saw the cop standing in front of the store, you pretended to be interested in the hosiery counter." Respondent stated that she had stopped at that counter as well as at the bag counter where she purchased a bag immediately before leaving the store. He then stated, "You had better not come back in this store again," and apologized to the policeman for having caused him so much trouble. Whereupon she made the rejoinder, "Well, what about me?" Without making a reply, the manager walked away.

Respondent then left the store and met her parents on the street and recounted to them what had transpired. All three returned to the Davison-Paxon Store and asked to speak with the manager, who came out of his office, and her father inquired of him as to what had occurred. The manager admitted that he had accused respondent of stealing and further admitted that no stolen goods had been found. The father of the respondent then explained to the appellant Howard that respondent was a teacher in the City Schools and that it would be necessary that she have some sort of statement of exoneration as protection. This was refused and he stated to respondent's mother and father, "I don't mind telling you both, yes, I believe she stole the underwear, because three of my clerks saw her." The manager then re-entered his office and closed the door.

The discussion began on Main Street within the heart of the shopping district of the City of Columbia on a Saturday morning and people began to gather around almost immediately within hearing of what was being said. At the suggestion of the Police Office, Mr. N. T. Cook, they returned to the Davison-Paxon Store where the discussion was resumed within the proximity of the elevator. On at least two occasions, the elevator girl, who was in a position to hear and understand, was observed looking in their direction.

In the order appealed from, reference is made to the case of *Duncan v. Record Publishing Company*, 145 S. C. 196, 143 S. E. 31, 56, where this Court stated: "The effect, therefore, of showing that the communication was made upon a privileged occasion is prima facie to rebut the quality or element of malice, and casts upon the plaintiff the necessity of showing malice in fact; that is, that the defendant was actuated by ill will in what he did and said, with a design to causelessly or wantonly injure the plaintiff; *and this malice in fact, resting as it must upon the libelous matter itself and the surrounding circumstances tending to prove fact and notice, is a question to be determined by the jury.* The question whether the occasion is such as to rebut the inference of malice, if the communication be *bona fide,* is one of law for the court; *but whether bona fides exist is one of fact for the jury. And the jury may find the existence of actual malice from the language of the communication itself, as well as from extrinsic evidence.*" See also *Turner v. Montgomery Ward & Company*, 165 S. C. 253, 163 S. E. 796; *Lily v. Belk's Dept. Store*, 178 S. C. 278, 182 S.E. 889; and *Fitchette v. Sumter Hardwood Co.*, 145 S. C. 53, 142 S. E. 828.

In the recent case of *Bell v. Bank of Abbeville*, 208 S. C. 490, 38 S. E. (2d) 641, 643, Id., 211 S. C. 167, 44 S. E. (2d) 328, this Court stated: "The circumstances themselves, the manner of speaking, the temper manifested, without extrinsic evidence, may be enough to indicate malice, and to

deprive the defendant of the benefit he might have derived from the occasion of the speaking. But this is always a question for the jury, whether the words spoken, if actionable in themselves, were spoken maliciously, and with a defamatory intention."

The facts in the instant case, however, are wholly different from those in the *Bell case, supra.* In this case, there was no attempt to protect the respondent from the eyes and ears of the public by making a discreet *bona fide* investigation, but the discussions apparently were conducted in a manner open to all who happened to be near. We are of the opinion that Exception I should be resolved against appellants.

In Exception II, appellants take the position that the alleged slanderous statements were spoken on a privileged occasion and that the Court erred in defining the malice necessary to exceed the defense of qualified privilege.

That portion of the charge complained of appears: "I further charge you * * * that 'if express malice on the part of the defendant is shown, exemplary or punitive damages are proper'—I will explain that to you a little later—'So, if the defamation was recklessly or carelessly published, punitive damages may properly be awarded as well as where the defamation was induced by the personal ill will of the defendant.' * * * I used the word 'malice' a minute ago, and I want to charge you this: that malice signifies nothing more than a false charge consciously and intentionally made, without just cause or excuse."

The words "recklessly or carelessly" were used in reference to the publication while in that portion of the opinion in the *Duncan v. Record case, supra,* the words "causelessly and wantonly" were used. Webster defines "causelessly" as "Without just cause or sufficient reason", and "carelessly" as, "Done, said or caused without due care, * * * having no care, having no concern or interest; unconcerned,

unmindful; also not taking ordinary or proper care, negligent, heedless, inattentive, etc."

The charge in this case was full and of considerable length, and when considered as a whole, it is difficult to perceive wherein appellants were prejudiced by the use of the words "recklessly and carelessly" at this point.

If the appellants desired that the jury be charged more fully or that portions of the charge should be clarified or made more explicit, it was their duty to so request, and not having done so, they are not now in position to ask reversal by reason thereof. *Kirven v. Kirven,* 162 S. C. 162, 160 S. E. 432; *Woodstock Hardwood & Spool Mfg. Co. v. Charleston Light & Water Co.,* 84 S. C. 306, 66 S. E. 194; *Knight v. Sullivan Power Co.,* 140 S. C. 296, 138 S. E. 818; *W. T. Rawleigh Co. v. Wilson,* 141 S. C. 182, 139 S. E. 395.

Exception III imputes error in that the Presiding Judge charged the jury that the words spoken were actionable *per se* and that respondent could recover without further proof and that this charge being repeated a number of times unduly emphasizes the respondent's theories of the case. This exception is dismissed for the reasons stated in overruling the second exception.

The next question to be considered is whether or not it was error to charge the jury: "Now, Mr. Foreman and Gentlemen, I also charge you that, 'if the defendants undertook to justify the slander and prove the truth of the statements and failed because justification is unsupported by the evidence, it may be considered a circumstance of aggravation, and a continued and express malice, and may properly be considered by the Jury in estimating the damages.' "

It being the contention all along of the appellants that they were acting under qualified privilege and did not plead the truth, we are unable to see wherein this quoted portion

of the charge taken in conjunction with other portions was misleading or in anywise prejudicial to appellants.

Question V imputes error in charging the jury: "First of all, Mr. Foreman and Gentlemen, it would be necessary for the plaintiff to prove by the greater weight or preponderance of the evidence that the statements alleged were made; second, that they were published, and publishing, Mr. Foreman and Gentlemen, means this: That they were made in the presence of those who come into Court and testify that they heard the statements—that's one way—or by showing that they were made in the presence of those who could have heard them, and I charge you, Mr. Foreman and Gentlemen, it is a question for you to say, when the plaintiff says that such statements were made in the presence of those who could have heard it, that even though a party might come into Court and say, 'I didn't hear it,' still, it is a question for you to say whether that statement was published or not."

This exception is based upon the fact that, although the testimony shows that the elevator operator was within hearing distance, she herself testified that she did not hear any of the alleged slanderous statements.

In *Tobias v. Sumter Telephone Co.,* 166 S. C. 161, 164 S. E. 446, this Court held that when a third person was present and could have heard the slanderous statements made, even though such third person denied hearing the statements, it became a question for the jury. Therefore, this question must be resolved against the appellants.

Question VI imputes error in that the Trial Judge instructed the jury that a verdict could be returned against both defendants. Under the circumstances heretofore related, we see no merit in this contention.

All questions presented in this appeal with the exception of the first one relate to various portions of the charge of the Trial Judge to the jury, at the conclusion of which the Trial Judge made the following inquiry:

"Gentlemen, is there anything further?

"Mr. Paschal: Nothing for the plaintiff.

"Mr. Robinson: If your Honor pleases, we would like you to instruct the jury, in view of the argument, that a verdict for the defendants is not a finding that the plaintiff is a thief."

There was no objection at the time and no request for any clarification.

We are of the opinion that the Trial Court did not err in overruling appellants' motion and that all exceptions should be dismissed, and it is so ordered.

BAKER, C. J., STUKES and OXNER, JJ., and L. D. LIDE, A. A. J., concur.