ELIZABETH MARKIEWICUS & another *vs.* TOWN OF
METHUEN.

Essex.    April 6, 1938. — June 28, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Sewer.    Eminent Domain,* Validity of taking, Damages.  *Estoppel.    Deed,*
Interest conveyed.  *Easement.    Municipal Corporations,* Liability for
tort, Sewer.  *Negligence,* In maintenance of sewer.

By conduct of an owner of real estate in not questioning the validity of
a taking in 1896 by a municipality of an easement for a sewer, in
refraining from claiming damages for said taking in return for exemp-
tion from a betterment assessment and in permitting the completion
of the sewer and enjoying the benefits thereof, he became estopped
to deny the validity of the taking, and his successors took title subject
to the easement.

A municipality was liable for damage suffered by a landowner through
its negligence in failing to repair a sewer after notice that, although
originally properly constructed, it had fallen into disrepair.

BILL IN EQUITY, filed in the Superior Court on March 4,
1935.

No question of pleading was raised.  By order of *Wil-
liams,* J., a final decree was entered merely that the de-
fendant was liable to the plaintiffs in the sum of $750 and
costs.  The plaintiffs appealed.

*R. A. A. Comparone,* for the plaintiffs.

*M. A. Cregg,* for the defendant.

DOLAN, J.    This is a suit in equity wherein the plain-
tiffs seek to have the defendant town of Methuen re-
strained from maintaining a sewer, owned by and under
the control of the defendant, on the plaintiffs' land, and
to recover damages for the use had by the defendant of
the land, and for injuries resulting from "breaks" or
"cave-ins" of the sewer.  The case was tried in the Su-
perior Court, and the judge refused injunctive relief and
ordered the entry of a final decree for the plaintiffs for
damages for injuries caused by two of the three sewer

"breaks" alleged. It comes before us on the plaintiffs' appeal from the final decree.

The evidence is reported and the judge made a finding of material facts. Questions of fact as well as of law are thus before us, and it is our duty to examine the evidence and decide the case according to our own judgment, giving due weight to the findings of the judge whose decision, based upon the hearing of oral testimony, will not be reversed unless plainly wrong. See *Martell* v. *Dorey*, 235 Mass. 35, 40; *Edwards* v. *Cockburn*, 264 Mass. 112, 120; *Brooks* v. *Bennett*, 277 Mass. 8, 14; *Adams* v. *Silverman*, 280 Mass. 23, 26; *Kevorkian* v. *Moors*, 299 Mass. 163, 166.

The plaintiffs, who are husband and wife, became the owners in 1923 of certain land, with two buildings of three tenements each thereon, situated on Camden Street in the defendant town. From 1891 to October 26, 1895, the property was owned by one Davis, and from October 26, 1895, to 1906, by one Kenyon or his widow. After 1906 several persons owned the property involved before it was acquired by the plaintiffs. It was agreed that in none of the deeds affecting the property was there any mention of the sewer, and that no instrument or document giving notice of the existence of the sewer was filed in the registry of deeds. There was evidence tending to show that the plaintiffs had no knowledge of the existence of the sewer until a "break" occurred on January 10, 1935, although, in fact, their premises were served by it. In 1936 two other "breaks" occurred, one in April and the other in December. There was also evidence to show that the sewer was laid out in the following manner: At the annual town meeting in 1894 a committee was chosen to investigate the project of constructing a sewer through a certain tract of land which included the land now owned by the plaintiffs. At a special town meeting in June, 1894, the committee presented its report, and the town thereupon voted to construct the sewer under the authority and direction of the road commissioners and appropriated money for the purpose. The road commissioners proceeded to cause the sewer to be built. At a meeting in

March, 1895, the town voted that the treasurer be author-
ized to borrow money to pay for the sewer built under
the vote of June, 1894. At the annual town meeting in
March, 1896, the town voted in accordance with the pro-
visions of Pub. Sts. c. 50, § 7, to accept and adopt the
sewer system in question together with proposed branches
as shown on a plan on file in the town clerk's office, and
that assessments under § 4 of said chapter be made. The
assessments were made under a warrant dated December
12, 1896.

After the vote of June, 1894, an agreement was made
between the road commissioners and each owner of prop-
erty abutting on the course of the proposed sewer, includ-
ing the then owner, Davis, that the owners would be
exempt from assessment and that they should demand no
damages for the taking. As a result of this agreement,
no damages were ever claimed by the then or succeeding
owners until the present bill was filed. The foregoing facts
are in substance found by the judge, but he found that no
betterment assessment was levied. It is established by
the evidence that an assessment was levied on the prop-
erty, now owned by the plaintiffs, against Kenyon, who
purchased it in October, 1895. However, in accordance
with the terms of the agreement between Davis, the former
owner, and the town, the assessment was abated.

The judge also found that the sewer was constructed
sometime in 1895, but did not expressly find who was in
fact the owner of the premises involved at the time of its
actual construction. It is apparent from the evidence of
the records of the town meetings, however, that the sewer
was constructed, at the latest, before the town meeting in
March, 1895, while Davis was the owner of the property.

By the statutes in force at the time, where land was
taken for a sewer, the road commissioners were required
to give written notice to the landowners, seven days at
least before taking action, of their intention to locate and
maintain the sewer, and also to file in the town clerk's
office the layout, with the boundaries and measurements,
seven days at least before the meeting when action was to

be taken by the town on their report. Pub. Sts. c. 50, §§ 1, 2; c. 49, §§ 67, 71.

It appears from the evidence that no written notice to the landowner was ever given, and that the layout required by the statute was not filed. The plans of the sewer filed with the town clerk had no boundaries or measurements to indicate the amount of land taken, and they did not bear the signatures of the road commissioners, any identification, or a filing date. The plans, together with the report of the commission which investigated the sewer project, did not constitute a filing of the layout. Apart from the lack of authentication of the plans, even when considered with the report, it was impossible to ascertain the precise land to be taken.

The giving of written notice and the filing of the layout required by the statutes were not mere formalities, but were indispensable conditions, upon compliance with which the right of appropriating private property for sewer uses could alone be lawfully exercised. *Jeffries* v. *Swampscott*, 105 Mass. 535, 536. *Blaisdell* v. *Winthrop*, 118 Mass. 138, 140. *Howland* v. *Greenfield*, 231 Mass. 147, 149. *Greenfield* v. *Burnham*, 250 Mass. 203, 211. Consequently, although there was compliance with other statutory requirements, since there was no compliance with these two requirements, the taking was not made as required by law.

The agreement of Davis, the then owner of the plaintiffs' land, not to claim damages for the taking of the land was valid although oral. *Fuller* v. *County Commissioners*, 15 Pick. 81. *Seymour* v. *Carter*, 2 Met. 520, 521. *Smith* v. *Goulding*, 6 Cush. 154. *Webster* v. *Lowell*, 139 Mass. 172, 173. This agreement, however, did not take away his right to question the validity of the layout of the sewer. *Sheehan* v. *Fitchburg*, 131 Mass. 523, 528. But whatever right the then owner might have had against the town for the taking must be held to have been lost by estoppel. He had knowledge of the construction of the sewer and was entirely willing that it should be constructed; his estate was benefited; he must have known what portion of the land was taken and he did not ques-

tion the validity of the taking. In these circumstances Davis became estopped to complain of any defects or errors in the proceedings. *Howland* v. *Greenfield*, 231 Mass. 147, 149, 150.

"It is settled that where an easement in private land is taken for the maintenance of a sewer, only the person who at the date of taking owns the land or some interest therein has any claim to damages," and the right to damages is a chose in action which does not pass by deed. *Howland* v. *Greenfield*, 231 Mass. 147, 148, and cases cited. *Barnes* v. *Springfield*, 268 Mass. 497, 505, 506. It follows that the plaintiffs have no right to damages for the taking of the land.

As to any claim against the town for the subjection of their land to the easement of the sewer, the plaintiffs could acquire no greater estate than that possessed by their predecessors, and since a predecessor in title, Davis, had knowingly and willingly permitted the land to become subject to the easement, the plaintiffs must hold the land subject to the easement. *Howland* v. *Greenfield*, 231 Mass. 147, 150. The plaintiffs have argued that the *Howland* case should not control here, since it appears in the master's report in the original papers in that case that the plaintiff knew of the existence of the sewer when she purchased the land from the one who owned it when the sewer was laid, while here the plaintiffs had no knowledge of the existence of the sewer when they purchased the land. We think, however, that the decision in the *Howland* case was not based upon the plaintiff's knowledge of the existence of the sewer, but was based on the principle that the grantee could obtain no greater estate than that of the grantor.

Since the plaintiffs are without right to recover damages for the taking of land for the sewer and without right to free their land from the easement, there remains but the question of their right to damages for the injury to their land caused by the "breaks" in the sewer. The judge found that the sewer was properly constructed with suitable materials, and was used by the defendant in connection with its general sewer system until January 10, 1935, when a section of the sewer pipe under the plaintiffs' land

broke, causing a cave-in; and that no negligence on the part of the town or its officials or agents contributed to or caused that break. As there was evidence to support these findings they must stand.

The judge further found that "the defendants had notice of the apparent condition of the sewer pipe after the first break in 1935 and in the exercise of due care and caution should have then relaid the entire pipe"; and that "By reason of the recent breaks in 1936 the plaintiffs have been damaged in the sum of $750." A town is liable for any damage resulting from negligence in the maintenance of its sewers. *Bates* v. *Westborough,* 151 Mass. 174, 182, 183. It follows that the judge was correct in finding that the defendant is liable for the damage to the plaintiffs' property resulting from the "breaks" in the sewer pipe which occurred in 1936. His finding as to damages is supported by the evidence and cannot be said to be plainly wrong. The plaintiffs' contention that the judge allowed damages only for the third "break" in the sewer pipe cannot be sustained. It is apparent from his findings that he allowed damages for the injuries caused by the second and third "breaks" in the sewer pipe in 1936 which were due to the negligence of the defendant. The entry will therefore be

*Decree affirmed, with costs of the appeal to the defendant.*