389 P.2d 606

STATE HIGHWAY COMMISSION of New Mexico, and L. D. Wilson, Chief Highway Engineer, Plaintiffs-Appellants and Cross-Appellees,

v.

The RUIDOSO TELEPHONE COMPANY (NSL), a New Mexico Corporation, Defendant-Appellee and Cross-Appellant.

No. 6957.

Supreme Court of New Mexico.

Aug. 19, 1963.

Rehearing Denied March 9, 1964.

488

Earl E. Hartley, Atty. Gen., M. W. Hamilton, Hadley Kelsey, Joseph L. Droege, John C. Worden, J. O. Walton, Sp. Asst. Attys. Gen., Santa Fe, for appellants.

Bigbee & Stephenson, Charles D. Olmsted, Santa Fe, for appellee.

GEORGE L. REESE, Jr., District Judge.

This controversy arose by an action filed June 11, 1957 by the State Highway Commission, hereinafter called Commission, against The Ruidoso Telephone Company, hereinafter called Company, in the district court of Santa Fe County for a declaratory judgment. It was alleged in the amended complaint that the Company was a New Mexico Corporation engaged as a public utility furnishing telephone service to the public in the vicinity of Ruidoso, New Mexico; that theretofore and after the right of way for U. S. Highway 70 in Lincoln County, New Mexico, had been acquired by the State for highway purposes, the Company installed within said right of way its poles, fixtures and other facilities for the purpose of furnishing its service and also installed certain of its said poles and facilities adjacent to said right of way.

It was alleged that the Commission had determined to widen and improve a portion of U. S. Highway 70 and had acquired the necessary additional right of way and had entered into a project agreement with the Commissioner of Public Roads, Bureau of Public Roads, United States Department of Commerce, whereby said federal agency will reimburse the State of New Mexico 62.88% of the costs incurred by it for the construction of said highway, including cost of relocation of utility facilities necessitated by such construction when the payment to such utility does not violate the law of the state nor violate a legal contract between the utility and the state.

It was alleged that demand had been made upon the Company to remove and relocate its facilities along the right of way of the project and that the Company had agreed to relocate the same in accordance with said demand but had demanded reimbursement from the state for its cost of said relocation.

It was alleged that the Commission had refused to reimburse the company for that portion of its lines and facilities within the old right of way, approximately 8881.82 feet in length and had demanded that all costs and expenses of such relocation be borne by the Company.

It was alleged that the Commission had refused to reimburse the Company for that portion of its lines adjacent to but outside the old right of way but within the new right of way approximately 4919.9 feet "until and unless defendant evidences to plaintiffs a valid title or property interest superseding plaintiffs' right of way and title to said additional right of way acquired for the widening required by Project No. F 021-1(2)."

It was alleged that a controversy existed between the parties in that the Commission contended that payment to the Company

**490**

pursuant to Section B of Chapter 237, Laws of 1957, would be in violation of various constitutional provisions set out in the pleading and that the Company denied that such payment would be in violation of such provisions.

The Company answered the complaint admitting most of the allegations, but alleged that it had not demanded reimbursement under Ch. 237, Laws 1957, for its lines, approximately 4919.9 feet, situated adjacent to but outside of the old right of way, for the reason that the Company had a prescriptive easement to maintain its utility facilities on this area and the Commission had not obtained this easement from the Company by purchase, condemnation or otherwise and that the refusal of the Commission to reimburse the Company for the relocation of this portion of its lines amounted to the taking of its property without just compensation.

The district court found no unconstitutionality in Ch. 237, Laws 1957, and entered its judgment declaring that under the provisions of said act the Company was entitled to reimbursement for the relocation costs of all its lines.

The Commission appealed from the judgment and in State Highway Commission v. The Ruidoso Telephone Co., 65 N.M. 101, 332 P.2d 1019, we held the Act to be in violation of certain provisions of the New Mexico Constitution and remanded the case to the district court to determine the controversy concerning the claim of the Company that it had easements over private lands for its facilities located outside the old right of way.

After remand, the district court considered the case on the admissions in the pleadings and a written stipulation of facts. The respective parties filed requested findings of fact and conclusions of law, part of which were denied, and the court entered its decision containing findings of fact and conclusions of law. On the authority of Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 112 A.L.R. 536, the district court held that the Company had valid easements as to 3231.8 feet of its lines which had been located upon private enclosed lands for more than ten years, but that as to 1688.1 feet of its lines which were not located within private enclosures, it had failed to establish valid easements.

The Commission appealed and the Company cross-appealed, and the parties have exhaustively briefed and argued the law relating to prescriptive easements and considerable effort has been expended by both parties in argument that the trial court properly or improperly made or refused to make certain requested findings of fact.

On the authority of Newbold v. Florance, 56 N.M. 284, 243 P.2d 597; Wilson v. Rowan Drilling Co., 55 N.M. 81, 227 P.2d 365; Valdez v. Salazar, 45 N.M. 1, 107

P.2d 862; Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and Davidson v. Enfield, 35 N.M. 580, 3 P.2d 979, we will dispose of the appeals upon the basis of the admissions in the pleadings, the written stipulation of facts and such inferences as may be necessarily and reasonably drawn therefrom.

The Company presented requested findings of fact and conclusions of law to the trial court adequately asserting its claim, repeated here, that by reason of its power of eminent domain and without regard to rules governing prescriptive easements generally, it had, under the admitted facts, valid easements covering the entire 4919.9 feet of its lines and facilities located on private lands outside the old right of way and now in question here. After due consideration we have determined that this claim should be upheld and will proceed to develop and decide the arguments pro and con, leaving undetermined the disputes as to the facts and law applicable to prescriptive easements where the claimant does not have the power of eminent domain.

The Company, since 1926, has been a New Mexico corporation, engaged as a public utility in furnishing telephone service to the public in the vicinity of Ruidoso, New Mexico. As such public utility it has, and has always had, the power of eminent domain under §§ 68–1–1 to 68–1–5 and 22–9–1 to 22–9–21, inclusive, N.M.S.A.1953 Comp. Roswell v. Mountain States Tel. & Tel. Co., 10 Cir., 78 F.2d 379.

The Company had a franchise from Lincoln County to use the highway for its poles and facilities and prior to 1931 it did use a county road and the fences bordering same in the area involved in this litigation. In 1930–31 Lincoln County obtained easements from the abutting owners of the property along the county road for the purpose of widening and reconstructing the road. The easements were for a total width of 80 feet in some areas, and 100 feet in others, and they embraced the old right of way. In the period 1931–1934, the new right of way was surveyed, the road was widened and reconstructed and the Company relocated its poles and facilities. In connection with such relocation the Company obtained verbal permission from the Commission to place its poles and facilities in the new right of way and after the relocation was completed a written permit so to do was issued by the Commission. In relocating its lines the Company apparently "took the short cut" in many places with the result that 4919.9 feet of its poles and facilities were located on private lands outside the highway right of way and at varying distances therefrom. Part of the relocated lines were on the highway side of bordering fences and part were on the private land side of such fences. There was no evidence available to show which came first, the fences or the poles, except in one area embracing 3270 feet it was stipulated that the bordering fence was first erected

and in this area 2710 feet of the poles and facilities in question were on the private land side of the fence, and 560 feet were on the highway side.

The ownership of the private lands abutting the highway changed after 1935 so that in 1957 none of the tracts involved in this case were owned by the 1935 owners.

The stipulation provides:

"Other than as set forth in this stipulation there is no testimony or documents available for introduction in this cause relating to any written or oral easements or rights of way from adjacent property owners for the lands outside of the 80–100 foot right of way at the various places occupied by the 5632.90 (the 4919.9 feet is in this figure) feet of the defendant's lines at the time of the filing of the complaint nor has plaintiff obtained such lands or an easement from defendant by purchase, condemnation or otherwise. That defendant continuously since 1926 has furnished telephone services to many abutting owners of the tracts upon which its lines outside of the old 80–100 foot right of way were placed, but there is no testimony or documents available for introduction in this cause of either permission or refusal from said property owners as to the placing of said lines on their respective tracts or of any demand for their removal."

In connection with the Federal Aid project giving rise to this litigation, the Commission, through Lincoln County, secured easements from the 1957 owners of the tracts in question and such easements did not recite that they were subject to any easement or right of the Company. However, the county and state took with actual notice of the rights of the Company because its poles and facilities were visible on the land and the Company was in the actual possession of the land to that extent. McBee v. O'Connell, 19 N.M. 565, 145 P. 123; Johnson v. Ryan, 43 N.M. 127, 86 P.2d 1040; Christmas v. Cowden, 44 N.M. 517, 105 P.2d 484; Nelms v. Miller, 56 N.M. 132, 241 P.2d 333; Conway v. San Miguel County Bd. of Ed., 59 N.M. 242, 282 P.2d 719.

The stipulation further provides:

"That for the purpose of this stipulation defendant's officers and directors have testified in this cause that whenever they had knowledge that their lines were on private property, they have maintained them openly, notoriously and adversely and without recognition of the rights of others."

The doctrine of easements by estoppel or waiver in behalf of public utilities is not new or novel although both parties assume in their briefs and oral arguments that this court has not previously considered it. It is true that we have not previously

been called upon to rule on the precise question involved in this cause but we have heretofore been concerned with some facets of the doctrine.

For instance, in Atchison T. & S. F. Ry. Co. v. Richter, 20 N.M. 278, 148 P. 478, the railroad company willfully and forcibly took possession of lands in the possession of Richter under a valid coal entry. After constructing a railroad and facilities across the lands, the company brought condemnation proceedings. The trial court instructed the jury that it should, in fixing the damages to Richter, take into consideration the value of the railroad and other fixtures placed on the land by the railroad company. We reversed and pointed out that while a willful trespasser ordinarily loses fixtures placed by him upon the lands of another because he has no right to re-enter in order to repossess them, this rule is not applicable to one who possesses the power of eminent domain. We said, in part:

"But this doctrine (willful trespasser), it seems to us, on principle, and certainly on authority, has no application in condemnation proceedings. The state, and, by delegation, municipal and other corporations, possess the power of eminent domain; that is, the power to enter upon and appropriate the private property of the citizen and devote it to a public use, rendering just compensation therefor. The fact that the state or the public service corporation has previously trespassed upon the land of the citizen has nothing whatever to do with the right to thus enter and appropriate the same."

In Mesich v. Board of County Com'rs of McKinley Co., 46 N.M. 412, 129 P.2d 974, we considered the right of a vendee to recover compensation for a taking of his lands for highway purposes where the taking occurred before he completed payment and obtained a deed.

We stated:

"It is a general rule that where private land is taken for public use only the person who at the date of the taking owns the land or has some interest in it, has any claim for damages; and the right to damages is a chose in action which does not pass by a deed to a subsequent purchaser. Markiewicus et al v. Methuen, 300 Mass. 560, 16 N.E.2d 32; Alabama G. & S. R. Co. v. Brown, 215 Ala. 533, 112 So. 131; Duke Power Co. v. Rutland, 4 Cir., 60 F.2d 194; and ordinarily a subsequent vendee takes the land subject to the right of his injured predecessor to exact and receive the compensation; McElroy v. Borough of Fort Lee, 3 Cir., 46 F.2d 777; Kindred v. Union Pacific R. Co., 225 U.S. 582, 32 S.Ct. 780, 56 L.Ed. 1216; but in this state, under § 43–301, Sts.1929, supra, the right to damages runs with the land, and a subsequent purchaser may recover such

damages if not paid to his predecessor in title."

In Markiewicus v. Town of Mathuen, 300 Mass. 560, 16 N.E.2d 32, cited in the above quotation, action was brought to enjoin the town from maintaining its sewer line across plaintiff's land or for damages. The court said:

"As to any claim against the town for the subjection of their land to the easement of the sewer, the plaintiffs could acquire no greater estate than that possessed by their predecessors, and since a predecessor in title, Davis, had knowingly and willingly permitted the land to become subject to the easement, the plaintiffs must hold the land subject to the easement. Howland v. Greenfield, 231 Mass. 147, 150, 120 N.E. 394. * * *"

In Alabama Great Southern Ry. Co. v. Brown, 215 Ala. 533, 112 So. 131, also cited in the quotation from the Mesich case, supra, the railroad company was held entitled to an injunction against a subsequent purchaser's interference with its facilities where the former owner of the land had not objected to the taking of his land by the railroad company and it was also held that a tender of compensation or damages was not necessary since the right to receive payment belonged to the former owner.

In Duke Power Company v. Rutland, 4 Cir., 60 F.2d 194, the power company had placed its poles and lines for the transmission of power on lands encumbered by a mortgage. The company procured an easement from one of the owners and the other owner of a half interest did not object to the erection of the facilities although having knowledge thereof. The mortgage was foreclosed and the grantee of the purchaser at the foreclosure sale sued for damages for the invasion of his property.

After holding that the grantee of the foreclosure sale might recover, the court on rehearing said:

"A point has been raised upon the rehearing of this cause, not raised upon the original hearing, viz., that the right to claim compensation for the taking by the power company was a personal right belonging to the owner of the land at the time of the taking, which did not pass to the plaintiff Rutland. We think that this point must be sustained. We need not, and do not, pass upon the question as to whether the rights of the mortgagee to compensation upon the construction of the power line passed to the purchaser in foreclosure. Even if it be assumed that the deed under foreclosure conveyed to the purchaser at the foreclosure sale the title which the mortgagor possessed at the time of the execution of the mortgage, it is clear that such purchaser was not entitled to eject the company from the premises but merely to re-

cover compensation for the easement taken. (Authorities cited but omitted). But this right, assuming that it existed, was personal to the purchaser at the foreclosure sale, and did not pass with a conveyance of the land. (Authorities cited, the last being Roberts v. Northern Pacific R. Co., 158 U.S. 1, 15 S.Ct. 756, 758, 39 L.Ed. 873). The rule is thus stated by Mr. Justice Shiras in the case last cited: 'It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burden of the railroad; and the right to payment from the railroad company if it entered by virtue of an agreement to pay, or to damages if the entry was unauthorized, belongs to the owner at the time the railroad company took possession.'

"The plaintiff cannot recover compensation for the easement taken, because this right did not pass with the mesne conveyances between him and the purchaser at the foreclosure sale. He cannot recover in trespass or ejectment because the occupancy of the power company is not wrongful. * * *"

In Kindred v. Union Pacific Co., 225 U.S. 582, 32 S.Ct. 780, 56 L.Ed. 1216, the court affirmed a decision of the Circuit Court of Appeals affirming a decree enjoining Kindred, et al., from interfering with the railroad facilities. We quote:

"It results that the sole irregularity in respect of the acquisition of the right of way contemplated by the treaty provision and the statute, taken together, was the failure to make compensation therefor to the Indian assignees when the railroad was constructed, or until after the lands had been sold for their benefit to the remote grantor of the appellants. The railroad was in existence and being operated across the land at the time of the sale, as ever since, and therefore there can be no claim that that or any subsequent purchase was made without notice of the right of way.

"So, if the appellants be regarded as claiming under the Indian assignees, which is the most favorable view for the appellants, the case still falls within the general rule that where a railroad company enters upon the land of another and constructs a railroad thereover under a statute entitling it so to do on condition that compensation be made to the owner, and the latter permits the road to be constructed and put into operation without a compli-

ance with that condition, a subsequent vendee of the owner takes the land subject to the burden of the right of way, and the right to exact payment therefor from the railroad company belongs to the owner at the time, the company entered and constructed the road. Roberts v. Northern P. R. Co., 158 U.S. 1, 39 L.Ed. 873, 15 Sup.Ct.Rep. 756, and cases cited."

■ Some courts in early days have given weight to constitutional provisions requiring payment in advance as a condition precedent to the taking in determining the right of a land owner to an injunction or to the remedies of trespass or ejectment. Our constitution, Art. 2, § 20, providing that "Private property shall not be taken or damaged for public use without just compensation," does not require payment in advance of the taking of damage. Summerford v. Board of Com'rs of Dona Ana County, 35 N.M. 374, 298 P. 410.

Later cases support the following statement in 18 Am.Jur., "Eminent Domain" § 391:

"An owner of land who knowingly allows an expensive public improvement to be erected upon his land without proper condemnation proceedings waives his right to object to the validity of the taking, and even when he is constitutionally entitled to compensation in advance, he is in such case estopped from asking for an injunction against the continued occupation of his land, or from attempting to require possession by writ of entry or ejectment proceedings. Furthermore, an owner who has so acted may himself be enjoined from attempting forcibly to remove or destroy the works that have been constructed upon his land. It is ordinarily held that he is deemed to have waived all other remedies which he might have invoked, save that of an action for compensation or damages; such an action is not waived. * * *"

To the same effect see Nichols on Eminent Domain, 3rd Ed., § 28.321, where cases from many states are cited.

Where one with the power of eminent domain has occupied land with its facilities without prior agreement, and action is brought for injunction or ejectment by the owner in possession at the time of the wrongful entry, the courts denying relief have usually placed their decisions on the ground of waiver or estoppel in that the land owners have stood by and done nothing until after the facilities were completed. This is undoubtedly a sound basis for decision where the land owner has knowledge of the wrongful entry and does nothing to prevent the construction of the facility.

However, as we pointed out in Atchison T. & S. F. Ry. Co. v. Richter, supra, the

company possessing the power of eminent domain may exercise that power regardless of the original wrongful entry and all the land owner can claim is just compensation for such of his land as is taken or damaged.

The Arizona Supreme Court in Boyd v. Atchison T. & S. F. Ry. Co., 39 Ariz. 154, 4 P.2d 670, a case somewhat similar to the instant one, adopted similar reasoning in discussing the character of the easement or right which enured to a railroad company when it placed its facilities on private lands abutting its right of way, saying:

"The only logical theory upon which the right of the original owner to recover possession of the land entered upon by a railroad is denied is that, since the railroad has in all events the right to secure possession by eminent domain of the property for its right of way, regardless of the owner's consent, he is fully compensated by his action for damages. Such being the case, we are of the opinion that in reason the title acquired in such a manner is similar to that which would have been acquired by proceedings in eminent domain. * * *"

In Taylor Investment Co. v. Kansas City Power and L. Co., 182 Kan. 511, 322 P.2d 817, the court noted the Kansas constitutional provision requiring prepayment as a condition of condemnation and its earlier decisions holding ejectment to be a proper remedy. It pointed out that those decisions had been modified by subsequent decisions denying the remedy to one standing by and permitting the construction to be made. The court then suggested the reason for the rule as being founded in public policy, quoting from the Indiana case of Indiana Bloomington & Western Ry. Co. v. Allen, 113 Ind. 581, 15 N.E. 446, and we quote, in part, from that case, as did the Kansas court:

"The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor, and controls the judgment of the court. Nor is there any great hardship upon the landowner in yielding to its dominion. Ample remedies are open to him. He may demand and secure full compensation. He may do more, for he may invoke the aid of the strong arm of the courts, but, to do this with success, he must move before public interests are involved. If he remains inactive, better that he suffer, if some one must suffer than the community. But he need not suffer; for compensation, if seasonably asked, will always be awarded him, although possession will be denied. * * *"

The public policy relied upon by the Indiana and Kansas courts is nothing more or less than a recognition and protection of the grant by the state of a portion of its

sovereign power of eminent domain to corporations serving a public purpose and we approve the statement of the Arizona court, supra, as to the correct basis and reason for the rule.

If knowledge on the part of the 1931–34 abutting owners of the construction of the Company's lines and facilities on their land must necessarily be shown in order that valid easements be declared to have been held by the Company in 1957, we would have no hesitancy in holding that such knowledge may properly be inferred from the admitted facts. From the admitted facts it appears that these owners executed easements to Lincoln County for an 80–100 foot right of way; that the road was widened and reconstructed and that the fences bordering the new road were reconstructed at about the same time as the telephone lines. It is undoubtedly true that the right of way was surveyed and the land owners would have no difficulty in ascertaining the boundaries of the highway right of way.

■ Under the admitted facts in this case it is not necessary for us to hold that a land owner is under all circumstances limited to an action for damages where a corporation with the power of eminent domain has entered upon his lands and constructed its facilities necessary for its corporate purposes without permission or prior condemnation proceedings, in order that we may properly announce our decision that under the facts in this case the Company had valid easements in 1957. Certainly such a holding is correct in this case where the Company constructed its facilities and had possession for some twenty-three years without any complaint from the land owners; and, during this period the ownership of the lands had changed so that none of the lands were, in 1957, owned by the owners in possession in 1934.

Lack of diligence has been held to be an effective bar to land owners in actions for injunction and actions in ejectment in cases like this by many courts. See annotations on this subject in 58 A.L.R. 681; 133 A.L.R. 11, at 133.

■ The Commission, having notice of the occupancy and rights of the Company, took its right of way easements subject to the burden of the right of the Company to maintain its lines on the lands in question. Roberts, et al., v. Northern Pac. R. R. Co., supra; Peckham, et al., v. A. T. & S. F. Ry. Co., 88 Okl. 174, 212 P. 427; Taylor Investment Co., Inc. v. Kansas City Power and Light Co., supra; Boyd v. Atchison T. & S. F. Ry. Co., supra; Rogers v. Lower Clear Creek Ditch Co., 63 Colo. 216, 165 P. 248; MacKenzie v. Corley, 94 Colo. 263, 29 P.2d 1044; Rogers v. Oklahoma City, 190 Okl. 78, 120 P.2d 997. Compare Southern Union Gas Company v. Cantrell, 56 N.M. 184, 241 P.2d 1209.

In the case last cited, the case came to us on the issue as to whether the company had a prescriptive easement for its gas line of which the defendant, subsequent purchaser, had no actual or constructive notice. The question was whether the gas Company could enjoin the erection of a house over its buried line. No contention or discussion of the rights of the parties other than as related to the claimed prescriptive easement was before the court. On remand of this case the court, pursuant to stipulation made at the first trial, considered the evidence introduced at the first trial regarding damages in order to give effect to the gas company's right of condemnation and this court, in Southern Union Gas Co. v. Cantrell, 57 N.M. 612, 261 P.2d 645, upheld the judgment of the district court.

The Commission in its Answer Brief, states:

"Plaintiff concurs in Defendant's statement on page 37 of Cross-Appellant's Brief in Chief with only a reservation as to the necessity or need for the alleged appropriation where it is said:

" '* * * it follows that the owners of the lands upon which the Defendant's transmission lines had stood for at least thirteen years were estopped and could not have sought the aid of the courts in this state to eject or in any way remove the lines from their lands, nor could they have enjoined the use of those lines by the Defendant. The interests of the public intervened when the facilities were erected. * * *' "

As to the necessity or need for the use of the private lands for its facilities, the Commission seems to argue that since the Company had permission to use the highway right of way it therefore had no necessity or need to place its facilities on the private lands. It cannot be argued that the facilities in question were not actually used by the Company for its corporate purposes and for a public use. The particular location of the right of way which a public utility company seeks to condemn for the exercise of its corporate function is a matter within the discretion and judgment of the company and is a part of the sovereign right of eminent domain which is granted to it by the legislature. The exercise of this judgment and discretion cannot be inquired into by the courts in the absence of fraud, bad faith, or gross abuse of discretion. 18 Am. Jur. "Eminent Domain" §§ 108 and 65. The Commission cites no authorities in support of its argument and we will not burden this opinion with any further discussion of the cases cited in the texts above cited.

Both parties have argued the question as to whether the right to recover damages for the easements appropriated by

the Company without payment was, under the admitted facts, barred by some statute of limitations. We do not understand how this question is of any consequence to a determination of the rights of these parties. It seems certain to us that the Commission is in no position to claim any damages which the 1931–34 land owners may have suffered.

As we said in Mesich v. Board of Co. Com'rs, 46 N.M. 412, 129 P.2d 974, the right to such damages is a chose in action which did not pass to the grantees of the 1931–34 owners as an incident of their conveyances and certainly the Commission can claim no right to such damages under its easements obtained in 1957 from the then owners.

In Mesich v. Board of Co. Com'rs, supra, we quoted the statutes which are now §§ 22–9–22 and 22–9–23, N.M.S.A.1953, and noted the change by the legislature in the rule by which subsequent grantees may recover damages for land previously taken without condemnation proceedings. These statutes by their very terms exclude telephone lines, telegraph lines, electric light or power transmission lines. As to others having the power of eminent domain who take without condemnation proceedings, § 22–9–23, N.M.S.A.1953, provides:

"The defendant or defendants to any such action may plead adverse possession as defined by section 3365 [23–1–22] of the New Mexico Statutes Anno-

tated, Codification of 1915, as a defense to said action, but no other statute of limitation shall be applicable or pleaded as a defense thereto."

The Company apparently feeling that if anyone had a right in 1957 to recover damages for its taking of the private lands in 1931–34 its position as to an existing easement might be weakened, argues that the right to recover such damages was barred by our four-year statute, § 23–1–4, N.M. S.A.1953, which reads:

"Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four [4] years."

The Commission quotes from 18 Am.Jur. "Eminent Domain" § 394, where it is stated that when a special remedy is provided by statute for the recovery of compensation for land taken by eminent domain, and no time limit is fixed for instituting proceedings, the weight of authority is to the effect that general statutes of limitation are not applicable and that the action may be maintained if brought within the period necessary to acquire land by adverse possession.

Needless to say, the right to recover which is discussed in 18 Am.Jur. § 394, supra, is the right of the owner of the land whose land was taken and not the right

claimed by a subsequent grantee who has no assignment of the chose in action. The subsequent grantee takes the land burdened with the easement of which he has notice, and which was taken before he acquired the land, and, absent a statute making this right run with the land he has no action.

We have mentioned these arguments regarding limitations so as to avoid the contention that we have decided the case without considering them. We do not attempt to decide the issue since, as we have already indicated, we hold that the whole question is immaterial to our decision.

The Commission argues that a decision of the kind we make today might permit an insolvent or bankrupt utility to take one's property without payment and without affording the land owner any means of enforcing payment, thus inviting fraud and disturbances of the public peace, as property owners might resentfully resort to "self-help." We do not anticipate any such dire results since a vigilant land owner is not by this decision barred from the effective remedies of injunction or ejectment against one who threatens to take or is engaged in taking his land without proper condemnation proceedings; and, should the insolvent or bankrupt utility take his land before he could bring his action, it would seem to follow that the trespass would be of a temporary nature or, at least, he could recover his compensation from the successor, if any of the bankrupt.

The judgment of the trial court is affirmed as to the 3231.8 feet of the Company's lines which were held to be located on lands over which the Company had established valid easements by prescription. The judgment is reversed as to the 1688.1 feet of the Company's lines located on lands over which the trial court held the Company had not established valid easements by prescription.

We have chosen to decide the case on a theory not followed by the trial court and for this reason have not decided whether the trial court's action was correct on the theory followed by it. The proper function of this court is to correct an erroneous result rather than to approve or disapprove the grounds upon which it is based. Flanagan v. Benvie, 58 N.M. 525, 273 P.2d 381; Ortiz v. Gonzales, 64 N.M. 445, 329 P.2d 1027; Armijo v. Shambaugh, 64 N.M. 459, 330 P.2d 546.

The action has been fully litigated and no further evidence is necessary or proper.

It is therefore ordered that this action be remanded to the district court with directions to enter judgment in favor of The Ruidoso Telephone Company in accordance with this opinion.

It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.