This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36430**

**TRUDY S. ABRAMS, RICHARD
GILLESPIE, LISA GILLESPIE,
MICHAEL ESAILI, JODI ESAILI,
LINDA L. WILSON, and JAMES J.
WILSON,**

Plaintiffs-Appellees,

v.

**AARON MARTINEZ, DANIEL
STREEBE, BOBBIE L. STREEBE,
CORA STREEBE, and JESSE
MARTINEZ,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Jeff Foster McElroy, District Judge**

Emery Law Firm, P.C.
Kelan Emery
Taos, NM

Law & Resource Planning Associates, A Professional Corporation
Charles T. DuMars
Tanya L. Scott
Albuquerque, NM

for Appellees

Peter B. Shoenfeld, P.A.
Peter B. Shoenfeld
Santa Fe, NM

The Law Office of Stephen C. Ross, P.C.
Stephen C. Ross
Santa Fe, NM

for Appellants

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** The district court entered partial summary judgment for Plaintiffs Trudy Abrams, Richard and Lisa Gillespie, Michael and Jodi Esaili, and James and Linda Wilson against Defendants Aaron Martinez, Daniel and Bobbie Streebe, Cora Streebe, and Jessie Martinez, allowing Plaintiffs to use the power of eminent domain to condemn a right-of-way for an irrigation ditch on land owned by Defendant Cora Streebe. On appeal, Defendants argue that the district court (1) lacked jurisdiction; (2) erred by granting summary judgment for Plaintiffs on their condemnation claim; and (3) erred by granting summary judgment as to the amount of money that constituted just compensation. We affirm.[1]

**DISCUSSION**

**I.     The District Court Had Jurisdiction**

**{2}** Defendants assert that, under NMSA 1978, Section 72-4-17 (1965), the district court lacked jurisdiction to decide whether Plaintiffs could condemn a right-of-way for the New Venita, an irrigation ditch, because Plaintiffs' water rights are involved in the ongoing stream-system-wide adjudication in *New Mexico ex rel. State Engineer v. Abeyta*, Fed. Dist. Ct. Nos. 69cv07896-MV & 69cv7939-MV (D.N.M.) (pending). Reviewing this question of jurisdiction and statutory interpretation de novo, *Buffington v. McGorty*, 2004-NMCA-092, ¶ 20, 136 N.M. 226, 96 P.3d 787, we disagree. In relevant part, Section 72-4-17 provides:

> In any suit for the determination of a right to use the waters of any stream system, all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties. . . . The court in which any suit involving the adjudication of water rights may be properly brought shall have exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved[.]

---

[1]Although both parties brought a number of claims in the proceedings below, the district court, acting pursuant to Rule 1-054(B) NMRA, entered a final judgment only on Plaintiffs' condemnation claim, and we consequently address only issues involving that claim.

By its terms, the statute applies only to "suit[s] for the determination of a right to use the waters of any stream system[.]" *Id.* This is not such a suit. Plaintiffs seek to condemn a right-of-way for an irrigation ditch, pursuant to NMSA 1978, Section 72-1-5 (1981), which permits any person to "exercise the right of eminent domain[] to take and acquire . . . right[s]-of-way for the construction, maintenance and operation of . . . ditches[] . . . for the storage or conveyance of water for beneficial uses[.]" In determining that the New Venita ditch would be used for the "conveyance of water for beneficial uses," Section 72-1-5, the district court was not "determin[ing a] question[] necessary for the adjudication of all water rights within [a] stream system[,]" Section 72-4-17, and we therefore hold that the district court had jurisdiction to decide Plaintiffs' condemnation claim.[2] Given the protracted nature of water rights litigation in our state, construing the jurisdictional statute otherwise would "impose an insuperable burden" on parties seeking to resolve between one another issues related to water rights that do not affect the larger adjudication in which those rights are at stake. *Chavez v. Gutierrez*, 1950-NMSC-004, ¶ 9, 54 N.M. 76, 213 P.2d 597; *see Lujan v. Acequia Mesa Del Medio*, 2019-NMCA-017, ¶ 18, 436 P.3d 734, *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-37425, Mar. 11, 2019) (holding that the district court had jurisdiction to resolve a dispute "involv[ing] the conduct of private parties governed by a valid court decree and other statutory provisions applicable to acequias and ditch associations" rather than "an adjudication or re-adjudication of water rights that would affect the rights of all claimants to the entire stream system"); *La Madera Cmty. Ditch Ass'n v. Sandia Peak Ski Co.*, 1995-NMCA-025, ¶¶ 6-8, 119 N.M. 591, 893 P.2d 487.

## II.     Defendants Have Not Demonstrated That the District Court Erroneously Granted Summary Judgment for Plaintiffs

## A.     Standard of Review

{3}     We review a district court's entry of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "New Mexico courts, unlike federal courts, view summary judgment with disfavor, preferring a trial on the merits." *Id.* ¶ 8. Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. The moving party has the "initial burden of establishing a prima facie case for summary judgment." *Romero*, 2010-NMSC-035, ¶ 10. If the movant makes a prima facie showing, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). To carry its burden, the non-movant must adduce evidence that supports reasonable inferences regarding material facts; the non-moving party may not rely on allegations, supposition, or conjecture. *Id.* ¶¶ 10-11.

---

2For similar reasons, we reject Defendants' argument that Plaintiffs could not condemn a right-of-way for the New Venita because any irrigation water obtained from the flooding of Defendants' lands is "artificial water." The district court, in determining that Plaintiffs had satisfied the requirements of Section 72-1-5, did not adjudicate Plaintiffs' water rights, and thus had no occasion to determine whether any water rights Plaintiffs asserted stemmed from the flooding of Defendants' lands or some other source, much less to finally conclude one way or another whether Plaintiffs possessed water rights as a matter of law.

**B.     Defendants Have Not Demonstrated That the District Court Erroneously Granted Summary Judgment for Plaintiffs on Their Condemnation Claim**

**{4}**      Defendants argue that we must reverse because the district court erroneously deprived them of their statutory right to a jury trial by failing to require Plaintiffs to demonstrate the necessity of condemning a right-of-way for the New Venita.[3] Defendants raise two related arguments on this point, contending, first, that the district court improperly weighed the evidence presented in support of and in opposition to Plaintiffs' summary judgment motion and, second, that the district court committed reversible error by applying the wrong legal standard to the evidence. We disagree.[4]

**{5}**      Although it is well-settled that a taking must be based on a necessity to achieve the public use for which it is sought, *see City of Carlsbad v. Ballard*, 1963-NMSC-031, ¶¶ 7-9, 71 N.M. 397, 378 P.2d 814; 71 Am. Jur. 3d *Proof of Facts* § 2, 108-09 (2003) ("[T]he existence of a genuine necessity is the foundation of the right to take property by eminent domain, and ascertainment of such necessity must precede or accompany the taking." (footnote omitted)), "the [L]egislature has the authority to delegate the power of eminent domain[,] and the grantee of that power has wide discretion as to its exercise, absent a statutory provision to the contrary." *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n*, 1996-NMSC-007, ¶ 31, 121 N.M. 272, 910 P.2d 906 (discussing *North v. Pub. Serv. Co. of N.M.*, 1983-NMCA-124, 101 N.M. 222, 680 P.2d 603). In exercising that discretion, "[t]he [grantee's] decision . . . as to the necessity, expediency, or propriety of exercising that power is political, legislative or administrative, and its determination is conclusive and not subject to judicial review, absent fraud, bad faith, or clear abuse of discretion." *North*, 1983-NMCA-124, ¶ 16; *see also State Hwy. Comm'n v. Ruidoso Tel.*

---

[3] Defendants also appear to assert that, because Plaintiffs already have an easement for the Old Venita, Plaintiffs' condemnation is inconsistent with Section 72-1-5's requirement that a condemned irrigation ditch right-of-way "be so located as to do the least damage to private or public property consistent with proper use and economical construction." We conclude that this argument—which their brief in chief raises unclearly, if at all, only in a footnote and which their reply brief raises only through conclusory statements—is insufficiently developed to permit us to properly review it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53.

[4] Defendants do not contend that Plaintiffs have failed to make a prima facie showing that the New Venita will be used to convey water to Plaintiffs' lands for the purpose of irrigation, a showing that the district court implicitly found had been made in ruling for Plaintiffs. Because, as a matter of law under the Eminent Domain section of the New Mexico Constitution, Article II, Section 20, the distribution of water for a beneficial use—such as irrigation—is a public use, *see Kaiser Steel Corp. v. W. S. Ranch Co.*, 1970-NMSC-043, ¶¶ 16, 22, 81 N.M. 414, 467 P.2d 986, we treat Defendants' failure to challenge the district court's finding as a concession that Plaintiffs' summary judgment motion was supported by sufficient evidence to prove the element of public use.

Defendants do apparently argue, however, that they introduced sufficient evidence to create a genuine dispute of material fact as to whether the New Venita will actually serve the public use for which it is sought. Relying on a survey plat and Defendant Daniel Streebe's affidavit, both of which were attached to their response to Plaintiffs' summary judgment motion, Defendants contend that they introduced evidence "show[ing] that the 'Vena' . . . terminates well short of the proposed New Venita" and thus that "the supposed source for the alleged sheet flows [running from the Vena to Plaintiffs' lands] does not exist." Before this Court, Defendants raise this argument for the first time in their reply brief, and we therefore decline to review it. *See Albuquerque Bernalillo Cty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 59, 148 N.M. 21, 229 P.3d 494 ("It is well established that we will not address issues raised for the first time in the reply brief." (internal quotation marks and citation omitted)).

*Co.*, 1963-NMSC-150, ¶ 43, 73 N.M. 487, 389 P.2d 606. The burden of proving fraud, bad faith, or a clear abuse of discretion "rests with the party challenging the authority [to condemn], not the party attempting to exercise it." *North*, 1983-NMCA-124, ¶ 27 n.3.[5]

**{6}**    Our analysis under this standard is shaped heavily by two facts that the district court determined were undisputed and that Defendants do not challenge on appeal.[6] First, the district court determined that Plaintiffs sought the New Venita "not as a replacement for the [O]ld [V]enita, but rather as a replacement for the less efficient over flooding through natural depressions that historically brought water to [P]laintiff'' parcels over the land now owned by [Defendants]." Second, the court determined that this flooding was "no longer feasible" and that it had been "more efficiently" replaced by the New Venita.

**{7}**    In light of these undisputed facts, Defendants have not shown a genuine dispute of material fact as to whether Plaintiffs' determination of necessity was the product of bad faith, fraud, or a clear abuse of discretion. None of Defendants' arguments before this Court pertain to the issue of fraud. Regarding bad faith, Defendants contend that Plaintiffs' taking is unnecessary because their condemnation action is a treatment for the "self-inflicted wound" Plaintiffs suffered when Plaintiff Abrams "depriv[ed] herself and her neighbors of the [Old Venita's] historic flows[]" by "construct[ing] a horse paddock across the historic alignment of the ditch[.]" We are unpersuaded. As an initial matter, this contention implies bad faith on the part of none of the Plaintiffs save Plaintiff Abrams. Even as to Plaintiff Abrams, Defendants have not demonstrated that they created a genuine dispute of material fact as to the issue of bad faith. Because the New Venita was not sought as a replacement for the Old Venita, we fail to see how Plaintiff Abrams's conduct in blocking the Old Venita raises an inference that Plaintiff Abrams acted in bad faith by seeking to replace an entirely different source of irrigation.

**{8}**    Finally, we are unpersuaded that Defendants have created a genuine dispute of material fact as to whether Plaintiffs' determination of necessity constitutes a clear abuse of discretion. Plaintiffs supported their motion for summary judgment with the affidavits of Plaintiff Abrams, Atilano Montoya, and Paul van Gulick. All three indicated that the Old Venita had historically irrigated neither the lands of Plaintiff James Wilson nor those of Plaintiffs Jodi and Michael Esaili, and instead had only been used to irrigate the portions of the lands of Plaintiffs Abrams, Linda Wilson, and Richard and Lisa Gillespie located below a flood depression. Montoya and van Gulick both testified that

---

5Defendants rely on out-of-state authority to argue that summary judgment should not have been granted because "[c]ondemnation by a private person exercising the right of eminent domain . . . is[] viewed with some skepticism by the [c]ourts, [which] view the remedy as a 'last resort' [appropriate] only when condemnation is absolutely necessary or indispensable." We decline to address this contention, presuming that Defendant's failure to cite any New Mexico authority in support of it means that none exists, *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329, and concluding that Defendants have inadequately developed their argument to the extent that they ask this Court to import another state's jurisprudence into New Mexico's. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

6We decline to treat the argument we addressed in footnote 4 as a challenge to those findings for the reason discussed in that footnote.

"land located uphill from a ditch is not deemed irrigated by that ditch[]" and indicated that they did not consider the Old Venita a "source of water supply to the highest portions of [Plaintiffs'] land[s.]" They also rejected the possibility of rerouting the Old Venita across Plaintiff Abrams's land as an alternative to Plaintiffs' condemnation because the proposed path would cause a "significant loss of efficiency in the delivery of water[,]" which they testified would "result in the loss of water to seepage in the ditch and evaporation[]" and ultimately result in the delivery of "less water" to Plaintiffs' lands. In contrast, both Montoya and van Gulick testified that use of the New Venita—which Plaintiff Abrams testified "crosses the shortest distance of any parcels owned by any . . . Defendants and . . . provides water at the highest point for irrigation of the Plaintiffs' parcels[]"—would be "the most efficient way to irrigate [all of Plaintiffs' lands]."

{9}    Defendants rely solely on the affidavit of Daniel Streebe to argue that they created a genuine dispute of material fact as to necessity.[7] Streebe testified that, had it not been blocked, the Old Venita "would be capable of deliver[ing] water to all . . . Plaintiffs in the same manner and to the same extent it was capable of doing so for many years." Streebe also indicated that, instead of seeking to condemn a right-of-way across Defendant Cora Streebe's land, Plaintiffs could have rerouted the portion of the Old Venita on Abrams's land to follow the path of the New Venita, testifying that "[t]he elevations of the land of . . . Abrams are such that water can flow by gravity from the point where the '[O]ld [V]enita' enters [her] land . . . to the northeast corner of her land[,] . . . then[] . . . to the point on her land where the '[N]ew [V]enita' . . . enters her land[,] . . . and then to all of the other Plaintiffs."

{10}    On the record before us, Defendants have not shown that Plaintiffs abused their discretion in seeking to condemn a right-of-way for the New Venita rather than attempting to irrigate their lands solely by means of the Old Venita. Daniel Streebe's affidavit does not contradict the fact that the water used to irrigate Plaintiffs' lands was historically delivered both through the Old Venita and through flooding across Defendants' lands. Nor does it give rise to a reasonable inference that the Old Venita alone could adequately deliver water for irrigation of Plaintiffs' lands. Although Daniel Streebe testified that the Old Venita could deliver water to Plaintiffs "in the same manner and to the same extent it was capable of . . . for many years[,]" that statement addresses neither what the historical extent of irrigation from the Old Venita was, nor the degree to which the Old Venita would be capable of adequately irrigating Plaintiffs' lands in the absence of what the district court found to be the "no longer feasible" practice of flood irrigation.

{11}    We are also unpersuaded by Defendants' argument that condemnation is unnecessary because it would be possible to reroute the Old Venita to run into the path of the New Venita entirely upon the lands of Plaintiff Abrams. Although Daniel Streebe's

---

7Although Defendants assert in their reply brief that "other documents" attached to their response created a genuine dispute of material fact, we again decline Defendants' invitation to consider a contention raised for the first time in a reply brief. We also conclude that their argument with respect to these documents—which consists of a single citation to a range of record pages spanning twenty-three pages of exhibits is insufficiently developed for appellate review. *See Headley*, 2005-NMCA-045, ¶ 15.

affidavit indicates that it would be possible to reroute the Old Venita, it does not controvert Plaintiffs' evidence that rerouting the Old Venita would cause a "loss of efficiency" and "result in the loss of water to seepage in the ditch and evaporation." Nor does it indicate that the New Venita is only minimally more efficient than the alternative route. We conclude that Defendants have shown no abuse of discretion in Plaintiffs' decision to forgo a wasteful and inefficient rerouting of the Old Venita and instead seek condemnation of, what the uncontroverted evidence shows is, the most efficient path for an irrigation ditch. *See North*, 1983-NMCA-124, ¶ 17 (holding that no abuse of discretion had been shown by evidence that the condemnor could have rerouted a power line to avoid the landowner's property where doing so "would have required a longer line and more construction[]" and the condemnor instead "chose the shorter and most direct route"). *See generally Kaiser Steel Corp.*, 1970-NMSC-043, ¶ 15 ("Our entire state has only enough water to supply its most urgent needs. Water conservation and preservation is of utmost importance. Its utilization for maximum benefits is a requirement second to none, not only for progress, but for survival."); *State ex rel. Erickson v. McLean*, 1957-NMSC-012, ¶ 20, 62 N.M. 264, 308 P.2d 983 ("Water, in this state, is too scarce, and consequently too precious, to admit waste.").

## C. Defendants Have Not Demonstrated That the District Court Erroneously Granted Summary Judgment on Just Compensation

**{12}** Finally, Defendants assert that the district court erred in concluding that $689 was just compensation for Plaintiffs' taking and granting Plaintiffs summary judgment on the issue (1) because the Eminent Domain Code, under NMSA 1978, Section 42A-1-21 (1981), guarantees a jury trial on the issue of damages when a party demands one; (2) because the Eminent Domain Code prohibits the use of a commissioners' report as evidence to support the entry of summary judgment once a party has filed a demand for a de novo trial; or (3) because, even if it is legally proper for a district court to grant summary judgment on the sole basis of a commissioners' report, the district court erred in doing so here because the amount of compensation fixed by the commissioners' report in this case[8] was reached through a legally flawed methodology. Because none of Defendants' arguments persuade us that the district court erred, we affirm as to just compensation.[9]

**{13}** First, we do not agree that the Eminent Domain Code prohibits entry of summary judgment whenever a party files a demand for a jury trial. Defendants rely on the language of Section 42A-1-21(A), which permits a party to a condemnation action to "demand trial of any issues remaining" following final confirmation of a commissioners'

---

8Although there were two commissioners' reports filed in the district court, that fact is not material to our analysis or to the parties' arguments on appeal, and, for simplicity, we refer to the revised commissioners' report as "the commissioners' report" throughout this opinion.

9Defendants do not contend on appeal—and apparently did not contend in the district court—that they created a genuine dispute of material fact regarding just compensation. Nor do they specifically point to anything in the record that would support such a contention. We will not make or develop Defendants' arguments for them, *Elane Photography, LLC*, 2013-NMSC-040, ¶ 70, and we therefore do not discuss the evidence Defendants submitted in opposition to Plaintiffs' summary judgment motion in discussing the arguments Defendants do make.

report. The statute provides that, when such a demand is made, "the cause shall be tried de novo[]" and that, "unless waived, the parties shall be entitled to a trial by jury." *Id.* We do not read that language as a prohibition on the entry of summary judgment, which the statute, on its face, does not address at all. Moreover, adhering to established principles of statutory construction, we read Section 42A-1-21 "in the context of the broader act in which [it is] situated," rather than in isolation. *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. Under NMSA 1978, Section 42A-1-15 (1981), "the Rules of Civil Procedure for the District Courts govern matters pursuant to [the Eminent Domain Code,]" unless (1) the Code "specifically provide[s] to the contrary" or (2) the Rules are "inconsistent with" the Code's provisions. The Code does not "specifically provide[]" that the rule of civil procedure governing summary judgment, Rule 1-056, is inapplicable to the issue of damages. Nor, in our view, is the Code "inconsistent with" the Rule. Defendants have offered no persuasive argument in support of their contention that the grant of a motion of summary judgment is incompatible with the statutory right to a jury trial provided for by the Eminent Domain Code despite its settled permissibility in the context of the constitutional right to a jury trial. *See New Mexico Law Grp., P.C. v. Byers*, 2018-NMCA-023, ¶ 3, 413 P.3d 875, *cert. denied* (S-1-SC-36905, Mar. 9, 2018) ("Despite the threshold constitutional guarantees, the grant of a motion for summary judgment does not, by itself, violate the right to a trial by jury."). Presented with no authority to support a contrary holding, we conclude that Section 42A-1-21 does not establish an unqualified right to a jury trial that automatically precludes the entry of summary judgment whenever a party demands a jury trial.

**{14}** Nor have Defendants persuaded us that the Eminent Domain Code, standing alone, prohibits district courts from treating an appealed-from commissioners' report as evidence supporting a grant of summary judgment. Defendants contend that the district court's entry of summary judgment on the issue of damages was unsupported by evidence because their demand for a de novo jury trial precluded the district court from considering the report, but we see nothing in the Eminent Domain Code that addresses the procedures governing summary judgment or places restrictions on the evidence that a district court may consider in deciding a summary judgment motion. Defendants do not contend that Plaintiffs' summary judgment motion failed to comply with the technical requirements of Rule 1-056 or that any legal authority other than the Code made consideration of the report improper. We decline to make such an argument on their behalf. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them."). On the basis of the argument presented to us, we conclude that the district court did not err in basing its grant of summary judgment as to just compensation on the commissioners' report.

**{15}** Finally, we are unpersuaded by Defendants' argument that the commissioners' report could not support summary judgment on the amount of $689 as just compensation because the commissioners, in arriving at that figure, (a) improperly applied the before-and-after rule by failing to consider the diminution in value of the portion of Defendant Cora Streebe's land that was not condemned; (b) failed to apply the "unity rule," which, according to Defendants, would have required the

commissioners to fix compensation for the diminution in value of the lands of all Defendants, rather than only the lands of Cora Streebe; and (c) failed to account for the loss in value of Cora Streebe's right to access "a significant portion of her property," a failure Defendants contend was exacerbated by the commissioner's failure to consider the combined effect of the New and Old Venitas on the value of that right.

**{16}**     Article II, Section 20 of the New Mexico Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." Consistent with that constitutional requirement, *see Cty. of Doña Ana ex rel. Cty. Comm'rs v. Bennett*, 1994-NMSC-005, ¶ 22, 116 N.M. 778, 867 P.2d 1160, the Eminent Domain Code provides that, in condemnation cases involving a partial taking of property like this one, the amount of just compensation is to be calculated by applying the "before and after rule." Under that rule, "the measure of compensation and damages resulting from the taking shall be the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking." NMSA 1978, § 42A-1-26 (1981). In determining what constitutes an "entire property," the "unity rule is applied to ascertain whether two or more parcels of property constitute a single larger tract." *Yates Petroleum Corp. v. Kennedy*, 1989-NMSC-039, ¶ 15, 108 N.M. 564, 775 P.2d 1281. Only those parcels "affected by [a] partial taking[]" are properly considered. *Id.* ¶ 17. Where the evidence shows that a taking will diminish the fair market value of an entire property only by the fair market value of the property actually taken, that value is the proper measure of just compensation. *Cf. id.* ¶ 21 ("When [a] landowner fails to present substantial evidence to support a finding of a diminution in the fair market value of the remaining property as a result of a partial taking, . . . just compensation should equal the fair market value of the property actually taken.").

**{17}**     Assuming for the sake of argument that it would be error for a district court to grant summary judgment on the basis of evidence that calculates just compensation without considering the "before and after" and "unity" rules, we are unpersuaded that that is what occurred below. On its face, the commissioners' report indicates that, contrary to Defendants' assertions, the commissioners did consider whether the lands of Defendants other than Cora Streebe would suffer any diminution in value; whether Cora Streebe's remaining land would suffer any diminution in value; and, specifically, whether the division of Cora Streebe's land into three pieces, rather than two, would adversely impact the remaining land's fair market value. After consideration, however, the commissioners concluded that Plaintiffs' taking would affect none of the other Defendants' lands and have no impact on the fair market value of Cora Streebe's remaining land.

**{18}**     In light of that evidence, we conclude that Plaintiffs made a prima facie showing (1) that Cora Streebe's parcel was the only parcel affected by Plaintiffs' taking; and (2) that Plaintiffs' taking decreased the fair market value of this parcel only by the value of the land actually taken. Defendants do not contend that compensation in the amount of $689 does not reflect the fair market value of the land actually taken by Plaintiffs' condemnation of a right of way for the New Venita or that other evidence created a

genuine dispute of material fact regarding that value. We consequently conclude that the district court did not err in granting summary judgment on the issue of compensation in that amount.

**CONCLUSION**

**{19}** We affirm and remand to the district court so that it may proceed with the remaining claims in a manner consistent with this opinion.

**{20}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**